PAE AO 241
(Rev. 07/10)



## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF 12   6787
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District: Eastern District of Pennsylvania |
|---|---|
| Name (under which you were convicted):<br>Tyrone Lyles | Docket or Case No.:<br>CP# 8410.3332.6787 |
| Place of Confinement: SCI-Dallas | Prisoner No.: AS.0362 |
| Petitioner (Include the name under which you<br>You were convicted)<br>Tyrone Lyles | Respondent (Name of Warden, Superintendent, Jailor, or authorized person having Custody of petitioner):<br>Jerome Walsh<br>and |

v.

The District Attorney of the County of: Philadelphia

and

The Attorney General of the State of: Corbett

### PETITION

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:
    Court of Common Pleas Phila, County First Judicial District

    (b). Criminal docket or case number (if you know): CP# 84.10.3332-3334

2.  (a) Date of judgment of conviction (if you know): Aug, 8, 1985

    (b) Date of sentencing: 1/1988

3.  Length of sentence: Life

4.  In this case, were you convicted on more than one count or of more than one crime? ☒ Yes ☐ No

5.  Identify all crimes of which you were convicted and sentenced in this case: Arson and First Degree murder   Life

PAE AO 241
(Rev. 07/10)

_____
_____
_____

6.  (a)  **What was your plea? (Check one)**

☒ (1)  Not Guilty        ☐ (3)  Nolo contendere (no contest)

☐ (2)  Guilty            ☐ (4)  Insanity plea

(b)  If you entered a guilty plea to one count or charge and a not guilty to another count or charge, what did you plead guilty to and what did you plead not guilty to?

(c)  If you went trial, what kind of trial did you have?   (Check one)

☒  Jury               ☐  Judge only

7.  Did you testify at a pretrial hearing, trial, or post-trial hearing?

☐  Yes               ☒  No

8.  Did you appeal from the judgment of conviction?

☒  Yes               ☐  No

9.  If you did appeal, answer the following:
    (a)  Name of court:  Superior Court Pennsylvania
    (b)  Docket or case number (if you know): _____
    (c)  Result:  Denied
    (d)  Date of result (if you know):  Oct. 1, 1990
    (e)  Citation to the case (if you know):  N/A
    (f)  Grounds raised:  ineffective assistace of counsel
    evidence was insufficient to support
    verdict, Trial court error.
    _____
    _____
    _____

PAE AO 241
(Rev. 07/10)

(g)   Did you seek further review by a higher state court?          ☒ Yes  ☐ No

If yes, answer the following:
(1) Name of court: _Superior Court, Pennsylvania_
(2) Docket or case number (if you know): _____
(3) Result: _Denied_
(4) Date of result (if you know): _N/A_
(5) Citation to the case (if you know): _____
(6) Grounds raised: _Same:_
_petition for rehearing_
_____
_____

(h)   Did you file a petition for certiorari in the United States Supreme Court?   ☐ Yes  ☒ No

If yes, answer the following:
(1) Docket or case number (if you know): _____
(2) Result: _____
(3) Date of result (if you know): _____
(4) Citation to the case (if you know): _____

10.   Other than the direct appeals listed above, have you previously filed any other petitions, applications, or

motions concerning this judgment of conviction in any state court?          ☒ Yes  ☐ No

11.   If your answer to Question 10 was "Yes," give the following information:
(1) Name of the court: _Court of Common Pleas, Phila. County_
(2) Docket or case number (if you know): _CP # 84-10-3332-3334_
(3) Date of filing (if you know): _1997_
(4) Nature of the proceeding: _PCRA_
(5) Grounds raised: _Substatially the same ap_
_direct appeal_
_____
_____
_____
_____
_____
_____
_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes  ☒ No

(7) Result: _Denied_

(8) Date of result (if you know): _____

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of the court: _Pennsylvania Supreme Court_

(2) Docket or case number (if you know): _N/A_

(3) Date of filing (if you know): _Dec, 8, 1999_

(4) Nature of the proceeding: _motion for leave to file appeal nunc pro tunc_

(5) Grounds raised: _Leave to file PCRA appeal nunc pro tunc_

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes  ☒ No

(7) Result: _Denied_

(8) Date of result (if you know): _March 3, 2000_

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of the court: _N/A_

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

PAE AO 241
(Rev. 07/10)

_____
_____
_____
_____

(6)  Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes  ☐ No

(7)  Result: _____

(8)  Date of result (if you know): _____

(d)  Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion:

| | | | |
|---|---|---|---|
| (1) | First petition | ☐ Yes | ☒ No |
| (2) | Second petition | ☐ Yes | ☑ No |
| (3) | Third petition | ☐ Yes | ☐ No |

(e)  If you did not appeal to the highest state court having jurisdiction, explain why you did not:

_counsel abandoned the direct appeal_
_PCRA counsel abandoned PCRA appeal_

12.  For this petition, state every ground which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four Grounds. State the facts supporting each ground.

**CAUTION:** To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-Court remedies on each ground on which your request action by the federal court. Also, if you fail to set Forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE:** _ineffective assistance of counsel_

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim):

_Petitioner was convicted under a theory of criminal liability he was not charged with, and all prior attorneys were ineffective for failing to raise this matter which which relieved the state of its burden of proof, see: memorandum_

PAE AO 241
(Rev. 07/10)

(b) If you did not exhaust your state remedies on Ground One, explain why: _procedurally barred because you can only file one PCRA petition unless you find new evidence_

_____

**(c) Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

☐ Yes          ☒ No

(2) If you did not raise this issue in your direct appeal, explain why? _conflict of interest with counsel. see memorandum_

_____

**(d) Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes          ☒ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____ N/A _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition          ☐ Yes          ☐ No

(4) Did you appeal from the denial of your motion or petition?          ☐ Yes          ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☐ Yes          ☐ No

(6) If your answer to Question(d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

PAE AO 241
(Rev. 07/10)

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise

this issue: _____

_____

_____

_____

_____

(e)        **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies,

etc.) that you have used to exhaust your state remedies on Ground One: _____

_____

_____

**GROUND TWO:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Two, explain why: _____

_____

_____

_____

(c) **Direct Appeal of Ground Two:**

        (1) If you appealed from the judgment of conviction, did you raise this issue?

                ☐ Yes                    ☐ No

PAE AO 241
(Rev. 07/10)

(2) If you did not raise this issue in your direct appeal, explain why? _____

_____

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes                    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:_____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition          ☐ Yes          ☐ No

(4) Did you appeal from the denial of your motion or petition?    ☐ Yes          ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☐ Yes                    ☐ No

(6) If your answer to Question(d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: ___(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

_____

_____

_____

PAE AO 241
(Rev. 07/10)

(c)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two: _____

_____

_____

_____

_____

_____

_____

_____

**GROUND THREE:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Three, explain why: _____

_____

_____

_____

(c) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

☐ Yes                    ☐ No

(2) If you did not raise this issue in your direct appeal, explain why? _____

_____

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus state trial court?

☐ Yes          ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

PAE AO 241
(Rev. 07/10)

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition          ☐ Yes          ☐ No

(4) Did you appeal from the denial of your motion or petition?    ☐ Yes          ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

     ☐ Yes     ☐ No

(6) If your answer to Question(d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise
this issue: _____

_____

_____

_____

(e)      **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies,
         etc.) that you have used to exhaust your state remedies on Ground Three: _____

_____

_____

_____

**GROUND FOUR:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your cla

PAE AO 241
(Rev. 07/10)

_____

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____

_____

_____

_____

(c) **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

☐ Yes                    ☐ No

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes          ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition          ☐ Yes          ☐ No

(4) Did you appeal from the denial of your motion or petition?          ☐ Yes          ☐ No

PAE AO 241
(Rev. 07/10)

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☐ Yes      ☐ No

(6) If your answer to Question(d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5)  is "No,"  explain why you  did  not raise

this issue: _____

_____

_____

_____

(e)      **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies,

etc.) that you have used to exhaust your state remedies on Ground Four: _____

_____

_____

_____

_____

_____

13.      Please answer these additional questions about the petition you are filing:

(a)      Have all grounds for relief that you raised in this petition been presented to the highest state

court having jurisdiction?            ☐ Yes      ☒ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for

not presenting them: Jury instructions and counsels
ineffectivenes , because for direct appeal
the petitioner had conflicted counsel who couldnt rai
her ineffectiveness, and PCRA counsel would not
Raise such matters who also abandon that matter
see: memorandumi

PAE AO 241
(Rev. 07/10)

Page 16

    (b)      Is there any ground in this petition that has not been presented in some state or federal court? If

so, which ground or grounds have not been presented, and state your reasons for not presenting

them: _all, of them, ineffective counsel_

_____

_____

14.    Have you previously filed any type of petition, application, or motion in a federal court regarding the

conviction that you challenge in this petition?    □ Yes   ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the

Issues raised, the date of the court's decision, and the result for each petition, application, or motion filed.

Attach a copy of any court opinion or order, if available. _____

_____

_____

_____

_____

_____

_____

15.    Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or

federal, for the judgment you are challenging?    □ Yes   ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and

the issues raised: _____

_____

_____

_____

16.    Give the name and address, if you know, of each attorney who represented you in the followin

the judgment you are challenging:

    (a)      At preliminary hearing: _____

_____

    (b)      At arraignment and plea: _____

_____

PAE AO 241
(Rev. 07/10)

(c)   At trial: _Mr. Richard Johnson_

(d)   At sentencing: _Ms. Marilyn Gelb_

(e)   On appeal: _Ms Marilyn Gelb_

(f)   In any post-conviction proceeding: _Ms Moira Dunworth_

(g)   On appeal from any ruling against you in a post-conviction proceeding: _Ms Moira Dunworth_

17.   Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?                    ☐ Yes   ☒ No

(a)   If so, give the name and location of the court that imposed the other sentence you will serve in the future: _____

(b)   Give the date the other sentence was imposed: _____

(c)   Give the length of the other sentence: _____

(d)   Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?                    ☐ Yes   ☐ No

18.   **TIMELINESS OF PETITION:** If your judgment of conviction became final over one year ago, you mu explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition*

_Prior to Martinez v Ryan, the impedimen to filing this matter was because he could no show cause for a default through PCRA Counsel. And believes this matter meet 2244 (B) and (D), where the exception of Martinez could not have been discovered through due dilig see memorandum_

PAE AO 241
(Rev. 07/10)

_____

_____

_____

_____

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. §

2244(d) provides in part that:

(1)     A one-year period of limitation shall apply to an application for a writ of habeas corpus by a
person in custody pursuant to the judgment of a State Court. The limitation period shall run from
the latest of —

(A)     the date on which the judgment became final by the conclusion of direct review or the
expiration of the time for seeking such review;

(B)     the date on which the impediment to filing an application created by State action in
violation of the Constitution or laws of the United States is removed, if the applicant was
prevented from filing by such state action;

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme
Court, if the right has been newly recognized by the Supreme Court and made
Retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been
discovered through the exercise of due diligence.

(2)     The time during which a properly filed application for State post-conviction or other collateral
review with respect to the pertinent judgment or claim is pending shall not be counted toward any
period of limitation under this subsection.

Therefore, petitioner ask that the Court grant the following relief: _Hear his_
_Claims on the merit_ _____

_____

_____

or any other relief to which petitioner may be entitled.

_____
Signature of Attorney (if any)

PAE AO 241
(Rev. 07/10)

Page 19

I, declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on __8. 28. 12__ .

Executed (signed) on _____ (date).

_____
Signature of Petitioner

If the person signing is not the petitioner, state the relationship to petitioner and explain why petitioner is not signing this petition. _____
_____
_____
_____
_____

PAE AO 241
(Rev. 07/10)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**Petition for Relief From a Conviction or Sentence**
**By a Person in State Custody**
**(Petition Under 28 U.S.C. § for a Writ of Habeas Corpus)**

## Instructions

1.  To use his form, you must be a person who is currently serving a sentence under a judgment against you in a state court. You are asking for relief from conviction of the sentence. this form is your petition for relief.

2.  You may also use this form to challenge a state judgment that imposed a sentence to be served in the future, but you must fill in the name of the state where the judgment was entered. If you want to challenge a federal judgment that imposed a sentence to be served in the future, you should file a motion under 28 U.S.C. § 2255 in the federal court that entered the judgment.

3.  Your habeas corpus petition must be filed within 1-year statute of limitations time limit set forth in 28 U.S.C. § 2244(d)(1). (there are limited circumstances in which the petition may be amended, within the one year period, to add additional claims or facts, see Federal Rules of Civil Procedure 15; or amended after the one-year period expires, in order to clarify or amplify claims which were timely presented, see United States v. Thomas, 221 F. 3d 430 (3rd Cir. 2000).

4.  Make sure the form is typed or neatly written.

5.  You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecute for perjury.

6.  Answer all the questions. You do not need to cite law. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a brief or argument, you must submit them in a separate memorandum.

7.  You must pay a fee of $5. If the fee is paid, your petition will be filed. If you cannot pay the fee, you may ask to proceed in forma pauperis (as a poor person). To do that, you must fill out an Application to Proceed in District Court Without Prepaying Fees or Costs. **Also, you must submit a certificate signed by an officer at the institution Where you are confined showing the amount of money that the institution is holding for you.**

8.  In this petition, you may challenge the judgment entered by only one court. If you want to challenge a judgment entered by a different court (either in the same state or in different states), you must file a separate petition.

9.  As required by 28 U.S.C. § 2254(b)(1), you must have exhausted all claims that you are making in your petition. This means that every claim mus have been presented to each level of the state courts. If you file a petition that contains claims that are not exhausted, the federal court will dismiss your petition. 28 U.S.C. § 2254(b)(2) provides that the federal court may deny your petition on the merits even if you have not exhausted your remedies.

10.  As required by 28 U.S.C. § 2244(b)(1), a federal court must dismiss any claim in a second or successive habeas corpus petition that was presented in a prior habeas corpus petition.

11.  As required by 28 U.S.C. § 2244(b)(2), a federal court mus dismiss any claim in a second or successive habeas corpus petition that was not presented in a prior habeas corpus petition unless you show:

    (A)  the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the U.S. Supreme Court, that was previously unavailable; or

    (B)  (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence, and (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found you guilty of the offense in question.

    Before such a second or successive petition may be filed in the district court, however, the petitioner must move in the court of appeals for an Order authorizing the district court to consider the petition. Petitioner's motion for such an Order must be determined by a three judge panel of the court of appeals, which must grant or deny the motion within 30 days. The court of appeals may grant the motion only if it determines that the petition makes a prima facie showing that it satisfies either (A) or (B).

12.  When you have completed this form, sent the original, three copies, and **these instructions** to the Clerk of the United States District Court as this address:

    **Clerk**
    **United States District Court**
    **for the Eastern District of Pennsylvania**
    **601 Market Street, Room 2609**
    **Philadelphia, PA 19106**

PAE AO 241
(Rev. 07/10)

13.   **CAUTION: You must include in this petition all the grounds for relief from the conviction or sentence that you challenge and you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

14.   **CAPITAL CASES: If you are under a sentence of death, you are entitled to the assistance of counsel and should request the appointment of counsel.**

# APPENDIX A

## JURY INSTRUCTIONS

### ARSON

After, the court instructed the jury on "conspiracy" at (pp 125-129), asserting, "with respect to Lyles, notwithstanding the absence of a criminal information, if the same elements that I'm explaining to you in defining a criminal conspiracy are proof by a record of the evidence beyond reasonable doubt with respect to Lyles, you wouldn't return a verdict of guilty to the charge of criminal conspiracy. But you will apply the conspirator's rule as I have explained it to you on vicarious responsibility on Lyles." Id. 126.

The court went on to instruct the jury on arson.

Here, the petitioner would contend that by following such instruction, with the instruction for arson, the court effectively relieved the state of it's due process burden of proving every essential element to constitute the crime of arson, beyond a reasonable doubt.

Thus, consider, after defining 'portions of the "arson" statutes, the court instructs the jury in the following manner:

> In order to find the defendent guilty of arson endangering property, you must be satisfied that the following two elements have been proved beyond a reasonable doubt.
> First, that the defendant 'intentionally started a fire or aided, consulted, paid or agreed to pay someone to start a fire or explosion. Id. 138.

When this portion of the court's instruction is considered in the context of the overall charge, beginning with the court's statement at (pp 107), asserting:

> So under the evidence in the case, the Commonwealth theory and submitted as relevant issues under the evidence--you all analyze it--that Lyles and Boyd, although they did not possibly throw the agency, instrumentality, bomb that caused the death in this case, they "are just as accountable for their criminal act of arson and murder

generally."
And that the murder generally, the degree of guilt is to be
determined in accordance to my instruction.
Because they are co-conspirators and/or accomplices of the
party, principle party who threw the bomb or
instrumentality or started the means by which the fire was
started...

The essential element's of arson is stated as, a defendant

intentionally started a fire," here, at (pp 107) the court

thoroughly established this element, where it stated: "although

they did not possibly throw the agency, instrumentality, bomb

that caused the death...they are just as accountable for their

act."

As for the second element, "aided or consulted," the court

established this element at (pp 107) and throughout the entire

instruction, by instructing the jury, that they could transfer

conspirator liability without finding the petitioner guilty of

that charge, as it was not charged in his indictment.

This interest is not disimilar to that instance of the court

establishing "malice" by eliminating the viability of the

manslaughter charge of the indictment.

In this case 'the court systematically established each

element of the crimes the petitioner was convicted of, as shown

through the court's jury instructions, here, the wrong entity

adjudged the petitioner's guilt, the Judge 'by relieving the jury

of their independent duty of finding the facts, thus, accord, **In**

**re Winship**, 397 U.S. 358, 364, 25 L.Ed. 368, 90 S.Ct. 1068

(1970), which announced:

...use of the reasonable doubt standard is indispensable to
command the respect and confidence of the community in
applications of criminal law. It is critical that moral
force of the law not be diluted by a standard of proof that

leaves people in doubt whether innocent men are being
condemned...
Lest there remain any doubt about the constitutional
stature of the reasonable doubt standard, we explicitly
hold that the Due Process Clause protects the accused
against conviction except upon proof beyond a reasonable
doubt of every fact necessary to constitute the crime with
which he is charged.

In this context, here, the petitioner was condemned, not
because of overwhelming evidence of his guilt of the crime
charged, but by the Judge's laborious jury instruction, saturated
with the court's instruction to apply conspirator liability to
the petitioner per se, even-though he was not charged with that
offense.

It is in this context that the petitioner is actually innocent
of the crimes charged, where here, his acts or failure to act was
not criminalized under the state conspiracy statute. Thus,
accord, **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 61
L.Ed.2d 560 (1979), which limited the standard of review of, **In
re Winship**, to determining:

Whether, after reviewing the evidence in the light most
favorable to the Prosecution, any rational trier of fact
could have found all the essential elements of the crime
charged beyond a reasonable doubt.

In such terms, reviewed in the light most favorable to the
prosecution, any rational trier of fact "could not" have found
all the essential elements of a crime the petitioner was not
charged with, in this instance "conspiracy," let alone transfer
that crime's theory of liability.

In this matter, the court created a theory of criminal conduct
to convict the petitioner under the charge's of the petitioner's
indictment, it is this posture of the case that demonstrates a

A-3

fundamental miscarriage of justice. Accord, **Edwards v. Carpenter**, 120 S.Ct. 1587, 529 U.S. 446 (U.S. Ohio 2000), asserting:

> There are three situations in which an otherwise valid state ground will bar federal claims: (1) where failure to consider a prisoner's claims will result in a "fundamental miscarriage of justice," **Coleman v. Thompson**, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); (2) where the state procedural rule was not firmly established and regularly followed," **Ford v. Georgia**, 498 U.S. 411, 423-424, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991); **James v. Kentucky**, 466 U.S. 341, 348-349, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984); and (3) where the prisoner had good "cause" for not following the state procedural rule and was "prejudiced" by not having done so, **Sykes**, supra, at 87, 97 S.Ct. 2497. Id. at 1593.

In a proper context, it would be a "fundamental miscarriage of justice," if this Honorable Court fail to consider the petitioner's claims in a manner similar to that accorded in, **Smith v. Horn**, 120 F.3d 400.

**Wherefore**, the petitioner prays for that relief that law and justice require.

DATED: 8, 28, 12

RESPECTFULLY SUBMITTED

*[signature]*

APPENDIX B

SUBSTANTIAL COUNSEL CLAIMS

## SUBSTANTIAL INEFFECTIVE COUNSEL CLAIMS

As an initial matter, the petitioner must reiterate, that he was charged under an information of general murder and arson, which trial counsel was fully aware of.

However, the court instructed the jury that they could use, the definition of "conspiracy" and apply it to the petitioner eventhough he was not charged with such offense.

Here, it was objectively unreasonable for trial counsel to not object to this line of instruction, and for Ms. Gelb not to raise such interest in post-verdict motions, where such instruction allowed the jury to convict the petitioner under a theory of criminal conduct he was not charged with.

Had trial counsel objected to such lines of instruction there's a reasonable probability that the outcome of the trial would have been different, in that a mistrial could have issued, or the jury could have been properly instructed as to what conduct was criminal as applied to the petitioner.

Had Ms. Gelb raised such matter at the post-verdict motion hearing, that proceeding would have had to arrest the initial judgment of the court.

Thus, consider, during the evidentiary portion of trial the petitioner was represented by, Mr. Johnson, however, because the petitioner pro se raised his ineffectiveness, the court removed Mr. Johnson, and appointed Ms. Gelb to represent the petitioner for post-verdict motions and the subsequent appeal process.

The petitioner on several occasions tried to cummunicate claims he wanted raised in the postverdict motion hearing,

B-1

however, Ms. Gelb, never responded to his letters, as a result a "conflict of interest ensued.

The unusual posture of this matter is attended in the fact that the state has never clearly defined the role of an attorney placed in a case at the post-verdict motion stage, so there's no clear definition as to that attorney's professional responsibility, whether to effectuate the client's best interest or act as an appeal lawyer and utilize they're discretion.

Here, the conflict of interest ensued because the petitioner wanted to raise the following grounds with those she wanted to raise, thus, accord:

> (1) His speedy trial rights were violated under the Fourteenth Amendment and Rule 1100 because he was arrested on Oct. 20, 1984, and did not start trial until June 10, 1985, and never requested postponents.
> (2) Trial counsel was ineffective for failing to request a severance from Mr. Boyd, (co-defendant).
> (3) Trial court erred in not granting a suppression motion, because his name was never mentioned with having anything to do with the case.
> (4) Trial counsel, the court and D.A., where in error for not investigating the statement of Estavia Johnson...

Ms. Gelb, announced to the court that she raised the issues which she felt should be raised in the manner they should be raised. (N.T. pp 2-5).

Ms. Gelb, went on to raise the following:

> (1) The Court erred, and a basically unfair trial resulted, where the prosecutor elicited testimony regarding prior uncharged criminal activity allegedly committed by the petitioner, as to those references which were not objected to trial counsel was ineffective...
> (2) Trial counsel was ineffective for failing to allow the petitioner to testify on his own behalf.
> (3) Trial counsel was ineffective in failing to present character evidence on behalf of the petitioner.

> On May 24, 1988, Ms. Gelb, filed a boiler plate amendment to supplement the post-verdict motion transcript, with the following:

(1) The evidence adduced at trial was insufficient as a matter of law to support the verdict. Specifically, the Commonwealth failed to prove beyond a reasonable doubt that the petitioner committed the crimes charged, either viacriously or as principle.

(2) Trial counsel was inefective for failure to call character witnesses to testify for petitioner.

(3) Trial counsel was ineffective for failure to object to substantial Commonwealth evidence impugning petitioner presumption of innocence by presenting evidence Lyles committed uncharged burglaries and robberies prior to the date of the instant charge.

(4) The prosecution in closing summation impugned petitioner presumption of innocence when he commented unfairly on three different occasions regarding problems about which he produced evidence in the course of the trial i.e., burglaries and robberies, although (he) knew these allegations were uncharged crimes for which petitioner had never been arrested, trial counsel was ineffective for failure to object.

(5) The court erred in instructing the jury at great length on Estavia Johnson's allegedly recanted testimony...

(6) Trial counsel was ineffective for failure to request that Estavia Johnson, after her direct testimony and cross-examination, be required to exercise her Fifth Amendment right to remain silent in the presence of the jury, which heard direct and cross-examinations.

(7) The court erred in failing to grant a mistrial upon request of trial counsel after a material Commonwealth witness Estavia Johnson testified in camera that she lied in her earlier testimony inculpating the petitioner.

(8) Trial counsel was ineffective for failure to request that the testimony of Estavia Johnson be stricken following disclosure by the prosecution that the witness lied when called to the witness stand...

(9) Trial counsel was ineffective for failure to call petitioner to the witness stand to testify in support of alibi defense that he was elsewhere at the time the crime took place. Trial counsel was also ineffective for advising petitioner that if he took the stand he was subject to cross-examination regarding prior offense, where he didn't have any...

The petitioner's standing to announce that Ms. Gelb's amended application is boiler plate is predicated on the fact that the grounds for relief are essentially the same, for instance: grounds, (1) and (3-4) of the amended petition are the same, as is, (2-3) with (2-9) amended petition and, (6-7-8) of the amended

petition, there was only two issues that at (1) and (5) of the amended petition that where different, and neither of them spoke to counsel's ineffectiveness.

However, those grounds do reflect that Ms. Gelb rendered a complete reading of the transcript.

Thus, because of the unusual posture of the petitioner's counsel situation, he would announce his ineffective assistance of trial counsel claims, through the manner of, **Bryant v. Scott**, 28 F.3d 1411; 1994 U.S.App.Lexus 22078, stating:

> In reviewing **Bryant's** ineffective assistance claim we must "judge the conduct of defense according to the objective standard of the reasonable attorney," **Kyles v. Whitely**, 5 F.3d 806, 819 (5th Cir. 1993), cert. granted, _U.S._, 114 S.Ct. 1610, 128 L.Ed.2d 338 (1994), and give great deference to counsel's assistance, strongly presuming that counsel has exercised reasonable professional judgment." **Ricalday v. Procunier**, 736 F.2d 203, 206 (5th Cir. 1984). Accordingly, an attorney's strategic choices, usually based on information supplied by the defendant and gathered from a thorough investigation of the relevant law and facts, "are virtually unchallengeable." **Strickland**, 466 U.S. at 691, 104 S.Ct. at 2066. We also observe that the reasonableness of an attorney's investigation may critically depend on information forwarded by the defendant and the defendant's own strategic decisions about his representation. See id. (stating that "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable"). However, an attorney must engage in a reasonable amount of pretrial investigation and "at a minimum ...interview potential witnessses and make an independent investigation of the facts and circumstances in the case." **Nealy**, 764 F.2d at 1177. The failure to interview eyewitnesses to a crime may strongly support a claim of ineffective assistance of counsel, see **Grey v. Lucas**, 677 F.2d 1086, 1093 n.5 (5th Cir. 1982) (noting that an attorney's failure to investigate crucial witness may constitute inadequate performance), cert. denied, 461 U.S. 910, 103 S.Ct. 1886, 76 L.Ed.2d 815 (1983), and when alibi witnesses are involved, it is unreasonable for counsel not to try to contact the witnesses and 'ascertain whether their testimony would aid the defense." **Grooms v. Solem**, 923 F.2d 88, 90 (8th Cir.1991), cert. denied, 461 U.S. 910, 103 S.Ct. 1886, 76 L.Ed.2d 815.

In the manner of, **Bryant**, the petitioner on several occasions sought to convey his interest in Ms. Gelb's representation, to the extent that as a last resort, he informed the court of the interest he requested Ms. Gelb to raise on his behalf.

Here the petitioner would contend that Ms. Gelb's representation suffered the rules of professional responsibility accorded trial counsel's, because her role as an appellate counsel was not at that time defined, but announced to begin after that proceeding, i.e. post-verdict motions.

As such, Ms. Gelb, as Mr. Johnson, suffered a reasonable duty to represent the petitioner through a thorough investigation of the relevant law of the case against the petitioner.

Thus consider, Mr. Johnson, in his initial postverdict motion petition stated, the Commonwealth:

> Did not proceed against the petitioner as a co-conspirator. Rather it was the Commonwealth intention to proceed against the petitioner pursuant to the accomplice doctrine.

Ms. Gelb, announced in her amended petition, at (1):

> The evidence adduced at trial was insufficient as a matter of law to support the verdict. Specifically, the Commonwealth failed to prove beyond a reasonable doubt that the petitioner committed the crimes charged, either vicariously or as principle.

Here, both counsels, were aware of the relevant law of the case, and knew the "evidence was insufficient to support the verdict," because the petitioner's verdict rested on a theory of criminal conduct, the petitioner was not charged with, "conspiracy."

Mr. Johnson even assert, that the Commonwealth did not proceed against the petitioner as a "co-conspirator."

However, knowing such, Mr. Johnson, still failed to object to the court's instruction to "transfer "conspiractor liability," to the petitioner.

The prejudicial impact of Mr. Johnson's failure to object, is that the petitioner was subsequently convicted, under a 'theory of criminal conduct he was not charged with, in this context Mr. Johnson was Constitutionally ineffective.

Through Ms. Gelb's, legal process of the claims she raised, announced her aquaintance not only with the relevant facts of the case but the law also which would render her performance objectively unreasonable, knowing Mr. Johnson was constitutionally ineffective for failing to object to the court's instruction 'to transfer conspirator liability to the petitioner."

At the juncture of the case Ms. Gelb made her appearance, her complete representation was based on the relevant facts of record and law, her failure, through her own words, "the evidence was insufficient to support vicarious liability or principle liability," renders her assistance Constitutionally inefective, for failing to state the obvious.

That the evidence was insufficient to support the verdict because it was based on a theory of liability that, even if the evidence against the petitioner was overwhelming, though it was not, could not support the verdict because his conduct was not criminalized under the conspiracy statute.

To fully access, Ms. Gelb's ineffectiveness, the petitioner would place her responsibility, through the proper context of a

interest he wanted raised in post-verdict motions.

At (4) in the petitioner's letter to Ms. Gelb, he requested she raise the following:

> Trial counsel, the court and the D.A., where in error for not investigating the statement of Estavia Johnson.

For summary purposes, Ms. Estavia Johnson, was brought into the case after closing arguments, the evidentiary portion of the trial was over.

Ms. Johnson, was introduced as an "eyewitness," in accord of her statement, the only alleged eyewitness that placed the petitioner as culprit to the crime.

Because of this alleged fact, the court allowed trial counsel a brief interview of her, and re-opened the case for the jury to hear her testimony.

The merit of this claim is attended in the fact that sound trial strategy is based on the established proposition of the case, those matters discussed and disclosed pre-trial.

In this context, it was objectively unreasonable for the court to refuse trial counsel an opportunity to fully explore Ms. Johnson.

As such the petitioner would assert this posture through the matters of, **United States v. Wirsing**, 719 F.2d 859, 864-66 (6th Cir. 1983), abuse of discretion to deny continuance where substantial prejudice resulted because attorney had no time to prepare defense.

In this initial context, the substantial prejudice that resulted from the court's decision to reopen the case to allow the testimony of Ms. Estavia Johnson, is predicated upon the fact

that she, of her own accord recanted her statement and testimony, asserting that she lied on the petitioner.

Here, had the court allowed trial counsel an opportunity to fully investigate Ms. Johnson, there's a reasonable probability that the jury would have never heard the tainted testimony inculpating the petitioner, and thereby, announcing a reasonable probability that the outcome of the trial may have been different, had the court allowed a continuance.

The established proposition of trial counsel's case was based upon the fact that the petitioner was not a participant nor at the scene of the crime, through alibi witnesses, because the court's action took the case away from this posture of the defense, it thereby, constructively denied the petitioner effective assistance of counsel as discussed in the matter of, **United States v. Rodgers**, 755 F.2d 533; (7th Cir. 1985), "the denial of a continuance can sometimes be tantamount to denial of counsel." According:

> Because of the broad ranging, almost standardless discretion that a trial court must exercise in scheduling trials, the grant or denial of a continuance is subject to appellate review only for abuse of discretion. **Morris v. Slappy**, 461 U.S. 1, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983) ("broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of justifiable request for delay' violates the right to the assistance of counsel") (quoting, **Ungar v. Sarafire**, 376 U.S. 575, 589, 11 L.Ed.2d 921, 84 S.Ct. 841 (1964); **United States v. Davis**, 604 F.2d 474, 480 (7th Cir. 1979). Moreover, in order to establish this abuse of discretion, a party normally must make some showing of actual prejudice resulting from the trial court's ruling...

The principle of the advocacy system of justice is basically predicated upon presentment of alternative theories of a case, if

the petitioner, through the presentment of evidence was placed somewhere other than the scene of the crime, albeit, by alibi witnesses, the natural confluence of the defense case would be the client's innocence.

Here, prior to the testimony of Estavia Johnson, there where two (2) witnesses, that alleged they saw the petitioner at the scene of the crime, Christopher Holmes and Loretta Smith, who's principle testimony negates each other, Holmes allege he saw the petitioner come in and walk to the pool table and walk back out, then the fire starts, Ms. Smith asserted she saw the petitioner walk in and and walk to where she was, and then walk out the door while it was being engulfed in flames.

Thus, other than Ms. Estavia Johnson, there wasn't even an unqualified identification of the petitioner.

The court's failure to grant a continuance to investigate Ms. Johnson, was a product of the court's systematic eradication of effective defense for the petitioner per se, thus consider, during direct examination by the prosecutor of a witness, accord:

> How about Mr. Lyles, when was he barred ?
> (A) He was barred, I think back in August from a burglary.
> Mr. Johnson, objection...
> The Court: Why was Mr. Lyles barred ?
> Witness: Lyles was barred for a burglary. (N.T. 6/12/85, pp 238-39).

Here, the court intentionally elicited other bad acts evidence, for an alleged crime the petitioner was not charged with.

The posture of the defense was further eviscerated at the opening of the jury instructions where, the court, announced

that, "I think during the course of one of the summations there was a reference to the fact that defense had proved the innocence of the defendant beyond a reasonable doubt. That may be misleading. The true picture is that only the Commonwealth has the burden of proof and the defendant bears no burden of proof. (pp 29-30).

At, (pp 92), the court announced, "You will recall that a positive, unqualified identification of the defendant by only one witness is sufficient for conviction, even though a half of dozen witnesses testified to alibi."

The unreasonableness of this particular jury instruction is that it only qualified for the co-defendant Boyd, where positive identifications where made, not so for the petitioner without an attempt to bolster the testimony of Estavia Johnson.

These paterns of abuse of discretion are saturated throughout the course of the jury instruction, which strengthened the state's case.

Thus, Cf, **Walberg .v Isreal**, 766 F.2d 1071, 1078 (7th Cir. 1985), asserting:

> Judge denied defendant effective assistance of counsel and fair trial where it was clear "judge made up his mind at the start of trial that the defendant was guilty" and who proceeded to intimidate the defendant's lawyer.

What is relative, that is, the nexus to be drawn from such matters, is found at, (pp 107 Jury Instruction), thus, accord:

> So under the evidence in the case, the Commonwealth theory and submitted as relevant issues under the evidence--you all analize it--that Lyles and Boyd, although they did not possibly throw the agency, instrumentality, bomb that cause the death in this case, they are just as accountable for their criminal act of arson and murder generally...Because they are co-conspirators and/or accomplices of the party...

B-10

Here, in a blatant sense the court not only made up it's mind the petitioner was guilty, but here the court went out of it's way to influence the jury to the extent that it invited the jury to convict the petitioner under the theory of conspiracy, even though the state did not deem his conduct criminalized under that statute.

As a trial attorney, Ms. Gelb, had a professional obligation to effectuate the client's best interest, by her failure to raise the petitioner's interest this matter was waived, not because the issue was without merit, but because she was set on raising the issues she felt should be raised the way she wanted to raise them, the prejudice of this matter is attended in the fact that had the petitioner's interest been considered by Ms. Gelb, the outcome of the proceeding may have been different.

When considering the interest the petitioner wanted advanced, each of them were of arguable merit, especially this interest and that of the severance, where the jury instructions clearly demonstrate an overlap of evidence and charge instructions without differential guidance from the court, nor trial counsel through objection.

Here, it must be noted that Ms. Gelb, is not asserted as being ineffective for raising the claims she raised, what is contended is that as a trial attorney it was objectively unreasonable for her not to effectuate the client's best interest, where those claims were waived.

As noted in the petitioner's memorandum, during the post-verdict motion hearing, the petitioner addressed the court and

asserted he had a conflict of interest with Ms. Gelb, for her failure to communicate and investigate certain witnesses and ultimately to raise the issues he felt could possibly exonerate him, thus consider, **Armenti v. United States of America**, 234 F.3d 820 (2nd Cir. 2000), at, III, holding:

> A defendant's Sixth Amendment right to counsel includes a right to conflict-free representation." **United States v. Rogers**, 209 F.3d 139, 143 (2nd Cir. 2000); see also **Wood v. Georgia**, 540 U.S. 261, 271, 67 L.Ed.2d 220, 101 S.Ct. 1097 (1981) (Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest.); **United States v. Levy**, 25 F.3d 146, 152 (2nd Cir. 1994) (same). Assertions of the right to conflict free counsel are of four different varieties: (a) that the district court's knowledge of a possible conflict imposed upon it a duty of inquiry; (b) that there was a per se conflict; (c) that there was an actual conflict; and (d) that there was a potential conflict...
> When, during the course of a criminal proceeding to which the defendant has a right to counsel, the court "is sufficiently apprised of even the possibility of a conflict of interest, the court...has an "inquiry" obligation," **Levy**, 25 F.3d at 153, and must disqualify the attorney or obtain a waiver from his or her client if the inquiry reveals that an actual or potential conflict exists, see id. See also **United States v. Lussier**, 71 F.3d 456, 461 (2nd Cir. 1995) (When a district court learns even the possibility of a conflict of interest, it must inquire into the details of the attorney interest to determine whether the conflict is actual, potential, or non-existent."), cert denied, 517 U.S. 1105, 134 L.Ed.2d 474, 116 S.Ct. 1321 (1996). The Sixth Amendment requires automatic reversal...when a trial court fails to conduct an inquiry after either a timely conflict objection, or if the court knows or reasonably should know that a particular conflict exists...

Accord the following transmission:

> Mrs. Gelb: Prior to the commencement of oral argument, my client has asked to be heard.
> The Court: Yes Mr. Lyles.
> Petitioner: Excuse me your honor, I would like the Court to know that I am dissatisfied with Ms. Gelb's representing me because we have no kind of communication, whatsoever, since I have been going through these post verdict motion things. I would add, at my post verdict motion, she refused to present people I wanted presented here, she refused to do it. I can't keep going through this. It's my life on the

line. I asked to see her and she refused to come and see
me. I had my family call her and she don't even let me know
whether I'm going to court or not. If I'm going to be
forced to go along with it, I have to do so, but I just
want the court to know that I am dissatisfied with her
because she don't do what I want to be done.
Ms. Gelb: In light of my client's dissatisfaction, may I
present an oral motion to withdraw.
The Court: Ms. Gelb, he said you did not present certain
grounds. I showed you a letter that was sent to me
enumerating four grounds that he says you did not present.
You have read them; Have you not?
Ms. Gelb: Yes Sir.
. . .
Ms. Gelb: Yes, your honor. I told Mr. Lyles that I raised
all the issues which I felt should be raised in the manner
they should be raised.
The Court: Those grounds would not have had merit.
Ms. Gelb: In a certain sense, I raised issue number four.
The Court: In effect, you did.
Ms. Gelb: I read Mr. Lyles dissatisfaction with present
counsel, requiring me to withdraw.
The Court: I think not, because if you thought the grounds
were not meritorious, you don't have to raise them; You
have discretion whether or not to raise them...(N.T.
7/6/88, pp 2-6).

Here a timely objection to counsel representation was

asserted, based upon the complete failure of attorney client

communication, however, the court's inquiry does not attempt to

assess counsel's reasons for failing to communicate with the

petitioner.

In this instance, the court was faced with counsel and client

who demonstrated contrary interest, not a "potential conflict,"

but a matter where the conflict became actual, and brushed it off

as non-existent.

Because the court did engage it's inquiry obligation, the

principles of, **Armenti**, are applicable, as here there was a per

se conflict, not of divided loyalties, but for some reason or

other counsel chose not to discuss the case with Mr. Lyles, who

B-13

reasonably wanted effective representation, which requires communication.

The petitioner's request were reasonable, as shown by Ms. Gelb when the court asserted that the claims were without merit, where she refused to answer such question twice.

Ms. Gelb, stated she raised issue four in a sense, meaning that the petitioner's interest was seen as of arguable merit even to her, however, while the record may be clear on this point the court failed to assess, what her problem was with the petitioner per se.

Here, the petitioner told the court, if he was forced to proceed with Ms. Gelb, he would do so, however, such announcement stands far beyond a sound waiver of conflict-free representation.

It should also be noted, that Ms. Gelb stated she raised issue four in a sense, meaning the matter she raised was distinguished from the petitioner's interest, who's claim, through the natural confluence of how the interest was framed, called to mind abuse of discretion, judicial bias, just as the petitioner's interest in "severance," which in keeping in line with the interest herein, **Walberg v. Isreal**, is again called upon, where in the same manner, a reasonable probability exist that, Ms. Gelb, may have been afraid to incur the judge's anger, thus accord:

> Specifically, the court found that counsel, who incurred
> the judge's anger for too vigorously acting on defendant's
> behalf, may have reduced his efforts in order to avoid the
> judge's opprobrium, which could have been expressed by the
> judge's refusal to approve counsel's fees or appoint him to
> future cases. The court ruled that even though it appeared
> that the evidence against the defendant was overwhelming
> the judge's conduct so infected the process that the
> petition for habeas had to be granted...

B-14

The court's final analysis of the conflict of interest, asserted:

> The Court: I will hear oral argument, (i.e. post-verdict motions), everything has to come to an end. If I grant the motion for a new trial, I will, in turn, grant you a motion to withdraw. If I deny the motion for a new trial, I will sentence him. You can take the appeal and then after you have effected the appeal, you can withdraw and we will let his appellate counsel challenge your effectiveness, so that way everything will be heard. He can challenge your effectiveness and trial counsel's effectiveness and we will give him a fresh lawyer to find inefective.

Here, it is clear that the court's interest in such matter didn't have anything to do with a "conflict" analysis, where the court never asked counsel why she failed to communicate with the petitioner, nor the details of why Ms. Gelb refused to raise the petitioner's interest, in fact, the court did not really consider the matter as conflict of interest.

Furthermore, the court, here, announces that after this proceeding counsel would effect an appeal, thus, clarifying, that Ms. Gelb, did maintain a professional responsibility to effectuate the client's best interest, thus, consider the matter of, **Armenti**, asserting:

> Even if automatic reversal is not required because the district court did not violate it's inquiry obligation and no per se conflict exists, reversal may still be required if the defendant establishes the existence of the third facet of conflict free representation--an actual conflict of interest. There is an actual conflict between lawyer and client "when during the course of representation, the attorney's and defendant's interest diverge with respect to a material factual or legal issue or to a course of action." **Winkler v. Keane**, 7 F.3d 304, 307 (2nd Cir. 1993) (quoting, **Cuyler**, 466 U.S. at 356 n.3). When counsel is burdened by an actual conflict that adversely affects performance, the defendant is not required to demonstrate prejudice; prejudice is presumed. see **Levy**, 25 F.3d at 155, citing, **Winkler**, 7 F.3d at 307). To prove adverse affect, the defendant must "demonstrate that some plausible alternative defense strategy or tactic might have been

pursued, 'and that the "alternative defense was inherentlyin conflict with or not undertaken due to the attorney's other loyalties or interest." **Winkler**. This is not a test that requires a defendant to show that the alternative strategy or tactic not adopted by a conflicted counsel was reasonable, that the lapse in representation affected the outcome of trial, or even that, but for the conflict, counsel's conduct of the trial would have been different. Rather, it is enough to show that a conflict existed that "was inherently in conflict with a plausible line of defense or attack on the prosecution's case...(explaining, that the defendant need not show that the defense would have been successful if the strategy had been used, but only that it possessed sufficient substance to be a viable alternative and was inherently in conflict with the attorney's other loyalties or interest).

The petitioner believes he has met this burden of proof, herein, and throughout the memorandum of law this matter follows.

In, the **Martinez**, context, PCRA counsel was ineffective for failing to raise the interest represented throughout this petition, where such counsel's standard of analysis hinge upon the viability of the omitted claims for relief, here, had PCRA counsel raised any of the interest advanced in this petition, even independently, there's a reasonable probability that the outcome of the collateral proceeding would have been different.

In such context, PCRA counsel was furthermore, ineffective for basically raising the same issues argued on appeal and post verdict motions, and forgoing the petitioner's interest, those announced herein with the inclusion of:

(1) Wanda Beauchamps, "alleged eyewitness," a material witness who testified at the preliminary hearing as the cause for the petitioner's arrest, where she identified him as throwing a firebomb, which testimony was thoroughly impeached by the fire marshal, who asserted that it was impossible for a fire to have started where she claimed the petitioner was and dropped such device. (2) Estavia Johnson's Mother: In Estavia Johnson's 11th hour testimony she alleged that she told her mother about the case, the materiality, i.e. probative value of calling her mother, is based in the fact 'that, after she admitted

that she lied in her trial testimony, and would have allegedly took the fifth if she was called back to the witness stand, her mother would have stood to provide an alternative theory for the jury to weigh Ms. Johnson's testimony.

(3) Tracey Edwards, who was never interviewed by counsel, which forclosed the opportunity for the jury to know how she came into the case and determine whether she had a motive to fabricate as in the matter of, Ms. Beauchamps and Ms. Johnson.

(4) Trial counsel was ineffective for failing to call character witnesses on behalf of Mr. Lyles.

PCRA counsel was also ineffective for not requesting the petitioner's direct appeal be reinstated nunc pro tunc, and for abandoning the petitioner on the PCRA petition appeal.

Wherefore, the petitioner prays that his matter be heard on the merits, and granted that relief that law and justice require.

DATED: *2 28, 12*

RESPECTFULLY SUBMITTED

*Tyrone Lyles*

B-17

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA



No.**12    6787**

TYRONE LYLES

v.

JEROME WALSH, et al.

_____

MEMORANDUM OF LAW IN SUPPORT OF
APPLICATION FOR HABEAS CORPUS RELIEF PURSUANT
TO §§§§ 2241, 2244, 2243 AND 2254 et seq.

_____

**Now Comes,** Tyrone Lyles, petitioner, pro se, who would move this Honorable Court, to grant him habeas relief pursuant to the "equitable principle" announced in, **Martinez v. Ryan**, 2012 WL 912950, which created an exception, to the "Cause and Prejudice" standard of **Coleman,** and hereafter, represent:

PROCEDURAL HISTORY

The petitoner, Tyrone Lyles, was arrested and charged with "arson and a general charge of murder."

The petitioner was held over for trial which commenced, June 10, 1985, before the Honorable Judge Robert Latrone.

On August 8, 1985, the petitioner was subsequently found guilty by a jury, of first degree murder and arson.

A timely appeal was filed, and denied, Oct. 1, 1990.

An application for re-hearing was filed, and denied, dated unclear.

A timely PCRA petition was filed in 1997, for which Ms. Moira Dunworth was appointed to represent the petitioner.

Such matter was subsequently denied, from which a timely appeal issued and was denied Oct. 4, 1999.

For some reason or other Ms. Dunworth, failed to appeal that matter to the Pa. Supreme Court.

To this extent the petitioner filed a motion for leave to file the appeal nunc pro tunc, Dec. 8, 1999.

Such matter was denied, March 3, 2000.

I

### JURISDICTION

General authority to grant federal habeas corpus relief jurisdiction is governed by 28 U.S.C.§ 2241 et seq., which now includes a strict one-year time limitation period for filing a petition, imposed by the (AEDPA) Anti-Terrorism-Effective-Death Penalty Act, for persons in custody pursuant to a state court judgment, pursuant to §2244(d)(1), which provide:

> A one year limitation period shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court. The limitation period shall run from the latest of--
> (A) the date on which the judgment became final by the conclusion of direct review or expiration of the time for seeking such review;
> (B) The date on which the impediment to filing an application created by state action in violation of the Constitution or Laws of the United States is removed, if the applicant was prevented from filing by such state action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims could have been discovered through the exercise of due diligence.

The petitioner, believes that a "new one year limtation period begins to run, when a petitioner can show that he meets the statutory requirements of, §2244(d)(1), (B)(C) or (D).

On March 20, 2012, the United States Supreme Court, in, **Martinez v. Ryan**, announced, that:

> Where, under state law, ineffective-assistance of trial counsel claims must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing those claims, if in the initial-review collateral proceeding, there was no counsel, or counsel in the proceeding was ineffective. Pp__

*Because, the United States* Supreme Court announced an exception to the "cause and prejudice," standard of **Coleman**, *the*

1

petitioner believes he has standing for habeas relief pursuant to, §2244(d)(1)(D), the date the factual predicate of the claim or claims could have been discovered through the exercise of due diligence.

**Martinez**, reasoned that, where the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise the ineffective-assistance claim, the collateral proceeding is the equivalent of a prisoner's direct appeal as to that claim because the state habeas court decides the claim's merits, no other court has addressed the claim, and defendants, "are generally ill equipped to represent themselves" where they have no brief from counsel and no court opinion addressing their claim. **Halbert v. Michigan**, 545 U.S. 605, 617, 125 S.Ct. 2582, 162 L.Ed.2d 552.

> An attorney's errors during an appeal on direct review may provide cause to excuse a procedural default; for if the attorney by the state is ineffective, the prisoner has been denied fair process and the opportunity to comply with the State's procedures and obtain an adjudication on the merits of his claim...

Upon this specific backdrop, the petitioner would direct this Honorable Court to consideration of Pennsylvania procedural rules for "waiver", thus, compare:

> **Com v. Hammock**, 466 A.2d 653, 319 Pa.Super 497 (1983), Alleged error regarding trial court's failure to grant demurrer was waived where it was not raised in post-verdict motions.

Under Pennsylvania law, where an attorney fails to raise a claim in post-verdict motions, that claim is waived and cannot be raised on direct appeal.

*The result is that because of the petitioner's failure to*

comply with the procedural rules of post-verdict motions, that claim has to be raised in an initial-review collateral proceeding (PCRA), thus, consider:

> **Com v. Strickland**, 452 A.2d 844, 306 Pa.Super 516 (1982), petitioner, who had not alleged existence of any extraordinary circumstances for failing to raise allegation at any time prior to appeal, waived claim that warrant was stale under (PCHA).

To the extent of matters thus far discussed, it is needed for this Honorable Court to consider that during the evidentiary process of trial, the petitioner was represented by, Mr. Richard Johnson, Esq., after the verdict was rendered the court allowed Mr. Johnson to withdraw, and appointed for post-verdict motions, Ms. Marilyn Gelb, Esq., who argued the post-verdict motions and direct appeal.

Here, the petitioner believes this unusual posture attends in principle, that trial counsel was direct appeal counsel, where, here, Ms. Gelb, could not raise an ineffective-assistance claim against herself on direct appeal for failing to preserve viable claims in post-verdict motions, even though she attempted to raise ineffective-assistance by Mr. Johnson during the evidentiary process of trial.

The petitioner, still had to wait for an initial-review collateral proceeding, to raise his substantial, ineffective-assistance at trial claims, where here, Ms. Gelb's ineffective-assistance in post-verdict motions, failed to preserve substantive claims of Mr. Johnson's ineffective-assistance, for *direct appeal.*

In accord of Pennsylvania law, post-verdict motions are an evidentiary process of trial to the extent that Ms. Gelb was in fact significant as trial counsel, to the affect that ethical concerns would have arose had such counsel raised an ineffective-assistance claim against herself.

To this end consider, **Massaro v. U.S.**, 123 S.Ct. 1690, 538 U.S. 500 (U.S. 2003), where the Court acknowledged that: "ineffective-assistance claims usually should be excused from procedural-default rules because an attorney who handles both trial and appeal is unlikely to raise an ineffective claim against herself."

Here, the facts of this matter are attended in that, a defendant's appeal rights are predicated on post-verdict motions, and here, where substantial claims were lost during that process, factors ineffective-assistance at trial.

Thus, the waived claims are not finalized through direct appeal.

At this juncture, it is necessary for this Honorable Court to consider the following posture of this case, which is determinative of the petitioner's standing to show "cause" in the context of **Martinez**, thus, accord:

> (N.T. post-verdict motions, pp 2-3): Ms. Gelb: prior to the commencement of oral argument, my client has asked to be heard.
> The Court: Yes, Mr. Lyles.
> Petitioner: Excuse me your Honor. I would like the Court to know that I am dissatisfied with Ms. Gelb's representing me because we have no kind of communication, whatsoever, since I have been going through these post-verdict motion things. *I would add, at my post-*verdict motion, she refused to *present people I wanted presented here, she refused to do* *it.*

I can't keep going through this. It's my life on the line. I asked to see her and she refused to come and see me. I had my family call her and she don't even let me know whether I'm going to court or not. If I am going to be forced to go along with it, I have to do so, but I just want the court to know that I am dissatisfied with her because she don't do what I want to be done.
Ms. Gelb: In light of my client's dissatisfaction, may I present an oral motion to withdraw.
The Court: Ms. Gelb, he said you did not present certain grounds. I showed you a letter that was sent to me enumerating four grounds that he says you did not present....

The Court, subsequently refused to allow Ms. Gelb to withdraw, asserting at (pp 5) that if she thought those grounds were meritless, she did not have to raise them.

Here, it must be noted that, the petitioner unlettered in the law, initiated trial counsel Mr. Johnson's ineffective-assistance based on his common sense, without a record of transcript.

As such, Ms. Gelb, did not delve, investigate the transcripts, which amounted to 41 volumes, with completely erroneous jury instructions that came close to two (200) hundred pages.

Where had that portion of the transcript of itself been investigated, such matter would have been preserved for direct appeal, and may have affected the outcome of that proceeding.

Thus, the unusual posture of this case, is that this was a post-verdict motion hearing, where the evidence indicate a conflict of interest based on unreasonable failure to investigate, and attorney 'client communication. Accord, **Hummel v. Rosemyer**, 564 F.3d 290 (C.A.3 (Pa.) 2009):

An attorney's conduct is judged based on whether it is *reasonably effective...of course, the reasonableness of counsel's conduct must be judged based on the facts of the*

particular case at the time the questioned conduct occurred.
Strategic choices made after less than a complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on the investigation. In other words, counsel has a duty to make reasonable investigations or to make reasonable decisions that makes particular investigation unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment.

Here, at such a critical stage of the proceeding, where a defendants liberty interest is pledged upon what grounds for relief are preserved and waived, is not so much as to what claim the petitioner wanted advanced weighed against the merit of the particular claim, but what meritorious claims should have been preserved based on a reasonable investigation by counsel of the record, and an inquiry as to why such counsel decided a particular investigation in a proceeding of this magnitude was unnecessary.

Here, the trial court erred in it's inquiry and thereby abused it's discretion, by not exploring through a thorough inquiry required in the presence of an on the record potential conflict of interest, as here, the judges attention was focussed on a defendant he knew to be unlettered in the law, instead of focussing on an adept attorney, who had a duty to clarify, why through an investigation of the record, such counsel's choices were sound strategy.

The factual evidence of record, fairly depicts, that the petitioner's posture toward counsel for failing to investigate *may have affected* counsel's perfomance adversely toward such

investigation, knowing, the petitioner was unlettered in law, and didn't know what valid claims he had for relief. Cf **Culver v. Sullivan**, 446 U.S. 355 (1980).

In this sense the trial court abused it's discretion, in that it's failure to give a full colloquy, deprived the petitioner a full and fair hearing, where here the petitioner objected in the proceeding citing a conflict of interest.

The question at this point, is did the trial court's posture, abuse of discretion 'render the proceeding so fundamentally unfair as to deny the petitioner due process, in the manner of, **Williams v. Singletary**, 114 F.3d 177, 179 (11th Cir. 1997); **United States v. Rodgers**, 755 F.2d 533, 540 (7th Cir. 1985).

Here, the court's failure to fully colloquy the matter affected a substantial fundamental right, the right to a full and fair hearing, the right to effective-assistance of counsel on direct appeal as of right, and the right to have those meritorious claims resulting from a complete investigation of the recorded transcript advanced, not all claims, but those with evidentiary value.

Thus, in the, **Martinez**, context:

> ...for if the attorney by the state is ineffective, the prisoner has been denied fair process and the opportunity to comply with the States procedures and obtain an adjudication on the merits of his claim...

In, 1993, the petitioner pro se, filed an initial-review (PCRA) collateral petition asserting trial/direct appeal counsels ineffectiveness, the court appointed Ms. Moria Dunworth, to represent the petitioner and amend the petition, *whom amended the petition, but here, again failed to include viable claims the*

7

petitioner sought to be pursued.

On, Oct. 19, 1998, the PCRA petition was dismissed, and Ms Dunworth filed a timely notice of appeal, and on, May 25, 1999, the petitioner filed a motion, styled as:

> APPELLANT'S PRO SE MOTION FOR AN ORDER DIRECTING COURT APPOINTED COUNSEL TO FILE A SUPPLEMENTAL BRIEF INCLUDING ALL OF APPELLANT'S ISSUES OF MERIT, OR IN THE ALTERNATIVE, FOR LEAVE TO PRO SE REPRESENTATION.

The petitioner, sought to raise four (4) claims, alleging trial counsels/direct appeal counsel's ineffectiveness; in this instance, the petitioner, unlettered in the law, was right, thus, accord, **Rompilla v. Horn**, 355 F.3d 233 (3rd Cir. 2004):

> **Strickland,** is the Supreme Court precedent governing ineffective assistance of counsel claims...and in order to show ineffective assistance under **Strickland,** a defendant must demonstrate (1) that counsel's 'representation fell below an objective standard of reasonableness...and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052. "Judicial scrutiny of counsel's performance must be highly deferential," and "every effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel' challenged conduct, and to evaluate the conduct from counsel's perspective at the time...there is a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy." **Bell**, 122 S.Ct. at 1852...

Sound trial strategy is predicated upon the established proposition of the case, as developed through discovery information and those pretrial evidentiary processes designed to insure the facts upon which the complaint extends under due process principles.

Through the establish proposition of the case, trial counsel *pledges* the opening statement/argument of the case against his

client, based upon strategies adduced from the facts proposed pretrial, thus "sound trial strategy."

Based upon this posture, counsel sets his defense of the case, he's prepared to defend from what's been established, however, when evidence outside of the established proposition of the case is entered, that prepared and same competent attorney, is forced to poke holes in evidence presented before him without prior warning and a fair evidentiary assessment; can it be fairly stated that under such condition, counsel functioned under sound trial strategy ?

The petitioner would insert the following posture of, **Harrison v. Anderson**, 300 F.Supp.2d 690 (Ind. 2004) fn. 7,):

> Realistically, a jury called upon to decide guilt must compare the prosecution's version of events giving rise to the case with the defense version...confidence in a proposition such as guilt, is created by excluding alternatives and undermined by presenting plausible alternatives...that is why the duty of a criminal defendant's lawyer to investigate is not satisfied just by looking for ways of poking holes in the government's case. There must also be a reasonable search for evidence that would support an alternative theory of the case.

In the petitioner's trial, "evidence of bad acts was introduced, 'an 11th hour eyewitness was admitted asserting she saw the petitioner, then hours later recant, admitting she committed perjury, and 'the preliminary hearing testimony of Wanda Beauchamps was read into evidence, without any good cause shown for her absence from the trial.

This is only three instances that undermined the established proposition of the case, now couple such with the erroneous jury instruction by a biased trial judge, now, consider sound trial strategy 'where here it was impossible for counsel to mitigate

9

the effects through alternative theories of defense, because the court instructed the jury that it was not trial counsel's duty to prove his client's innocence.

In such context trial counsel was rendered ineffective, where the Sixth Amendment requires more than poking holes in the state's proposition of the case, and the jury instructions were weighted against the petitioner per se.

Here, ultimately, the petitioner would contend that the constitutional harm encompassed in this case rose to a level of 'egregious," and it would result in a fundamental miscarriage of justice, if this Honorable Court failed to hear the merit of the petitioner's claims.

"Cause" in the **Martinez**, context, may be established in two circumstances: (1) where the state courts did not appoint counsel in the initial-review collateral proceeding for an ineffective-at-trial-counsel-claim; and (2) where appointed counsel in the initial-review collateral proceeding, where that claim should have been raised, was ineffective under **Strickland**, 466 U.S. 668.

The petitioner would also announce his standing in **Martinez**, pursuant to §2244(d)(1)(B), the date on which the impediment to filing an application created by state action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action.

In such context, prior to **Martinez**, because the petitioner's claims where waived because of PCRA counsel's ignorance of state PCRA law, he could not show cause for the default of those claims based on ineffective assistance by such counsel, here, **Martinez**,

has announced that "cause" for the default may be shown through PCRA counsel's ineffectiveness under **Strickland**.

The impediment created by state action in this instance is attended in the fact that, **Strickland**, is not a cognizable ground for relief pursuant to §9543(a)(2)(ii), requirements, which are diametrically opposed to **Strickland**, in that the sub-chapter requiers a petitioner to "plead and prove by a preponderance of evidence" the enumerated grounds for relief.

In other words, when a state prisoner's PCRA counsel claims are rejected by the courts, they are rejected because the petitioner failed to plead and prove his entitlement for relief by a "preponderance of evidence."

Within this context, the petitioner believes he has standing to have his substantial at trial counsel claims heard under **Martinez**.

Thus, accord, the following:

## INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner, because of the unusual posture of this case, i.e. petitioner's attorney situation, he would assert his standing for "ineffective-assistance-at-trial counsel," claim, in similar accord of the terms expounded through, **Showers v. Beard**, WL 4899981 (M.D.Pa. 2008), which expounds:

> Claims of ineffective assistance of appellant counsel must be examined under the same **Strickland** standards...(1) counsel's performance was unreasonable, and (2) counsel's unreasonable performance actually prejudiced the defense. If a court finds no merit in a claim of ineffective assistance of trial counsel, appellate counsel cannot be found ineffective for failing to raise those same meritless issues on appeal. Cf **United States v. Cook**, 45 F.3d 388, 392-93 (10th Cir.1995) (When a defendant alleges his appellate counsel rendered ineffective assistance by failing to raise an issue on appeal, we examine the merit of the omitted issue. If the omitted issue is without merit, counsel's failure to raise it does not constitute constitutionally-ineffective-assistance of counsel.) Stated otherwise, if there is no ineffective assistance at the trail level, there can be no ineffective assistance on appeal for failure to raise the same issue...

## JURY INSTRUCTIONS

### CONSPIRACY

To initiate this interest, the petitioner would insert the posture of, **Powell v. Galaza**, 328 F.3d 558 (C.A.9 2003), where, an instruction that the only contested element has been satisfied cannot be reviewed for harmless error because the wrong entity, the judge rather than the jury, is responsible for the rendering of the verdict; that is, the guilty verdict cannot be said to emanate from the jury because the judge has made the one factual finding on which the verdict rest. U.S.C.A.Const.Amend 6.

The petitioner, Mr. Tyrone Lyles, was charged with "general

murder and arson."

Under Pensylvania law pursuant to, 18 Pa.C.S.A.§ 903, Criminal Conspiracy is a 'inchoate crime, that must be charged on the indictment/information.

In this matter, the trial judge asserts the following, when he attempts to define "vicarious responsibility," 'in principle, whether there is criminal responsibility lies upon proof establishing that either or both of the defendants were either conspirators or accomplices."

The court, goes on to announce that, "some confusion under the present statutes of the law of Pennsylvania concerning "vicarious responsibility," it would appear under the law the co-conspirator doctrine can only be applicable if a prior agreement is established."

Here, a prior agreement is information of the accusation against Boyd. There is no information charging "conspiracy" against Lyles.", thus accord, (N.T. Jury Instrctions, pp 105-132.):

> (pp 106): The proof or absence of accomplice, vicarious responsibility as a matter of law--I will briefly discuss these items again a little later after I explain the co-conspirator rule and rule governing accomplice.
> You don't need a prior agreement in order to find two or more persons are accomplices.
> It's not the actual existence of an explicit agreement that must be proved.
> It's the facts and circumstances that would prove beyond a reasonable doubt that there was a common criminal partnership, design or plan without any proven agreement to act together in concert as accomplices at the commission of the crime in this case.
> So under the evidence in the case, the Commonwealth theory and submitted as relevant under the evidence--you analyze it--that Lyles and Boyd, although they did not possibly throw the agency, instrumentality, bomb that caused the death in this case, they are just as accountable for their criminal act of arson and murder generally.

And that the murder generally, the degree of guilt is to be determined in accordance to my instruction.

Because they were co-conspirators and/or accomplices of the party, principle party who threw the bomb or instrumentality or started the means by which the fire was started.

...If they were found to be --that is, if it was proven beyond a reasonable doubt there was a conspiracy and you find the defendants were conspirators and/or accomplices to the principle party who threw the device, agency or instumentality which caused the other offenses, arson, and some degree of criminal homicide , they are just as accountable as the party who set all of the criminal acts in motion.

The difference--there is a gap in the law as I said which is of no concern to you--if you find there was a prior agreement and conspiracy was proven beyond a reasonable doubt pertinent to a criminal information that is charged as to Boyd--no criminal information as to that charge as to Lyles--then you apply the conspirators rule for vicarious resonsibility.

Simply stated, if you believe that there was sufficient evidence in the case to prove that Lyles absent criminal information or in conspiracy did conspire with other people, you would prove a theory of accountablility or liability as has been established on the record.

Even absent a verdict of guilty on criminal information charging conspiracy, you can apply that application over as to Lyles...

It was objectively unreasonable for trial counsel Mr. Johnson not to object to this form of instruction, not only has the judge rendered the verdict of Mr. Lyles guilt of the crimes charged, but did so under bad law, a posture of law the court acknowledge did not exist.

The court announced that there was some confusion under Pennsylvania statute law, 'it would appear that under the law the co-conspirator doctrine can only be applicable if a prior agreement is established, asserting there is no information charging Mr. Lyles with conspairacy, but go on, at (N.T. pp 109), in an attempt to force the conspirator theory on Mr. Lyles, state, 'the difference--there is a gap in the law as I have said

which is of no concern to you--.

Here any competent attorney would have objected to this line of instruction, where the court in effect is altering the terms of his client's indictment/information, with a crime he was not charged with. Cf **U.S. v. Barrow**, 118 F.3d 482 (C.A.6 (Mich.) 1997), stating:

> Variance rise to a level of constructive amendment when terms of the indictment are in effect altered by presentation of evidence and jury instructions which so modify essential elements of offense charged that there is substantial likelihood that defendant may have been convicted of offense other than that charged in indictment.

Here, the court in specific terms instructed the jury to apply the rules of conspiracy to the petitioner even though he's not charged with that crime. The court goes on to announce:

> (N.T. pp 111): The Commonwealth contends that the defendants were acting in a conspiracy with themselves or other persons...By application, what is called the co-conspirator rule or doctrine was applicable law at the time pertinent to this case. Even though there was a change in the statutory law of Pennsylvania, the rule is still the available doctrine in Pennsylvania...

18 Pa.C.S.A.§ 903, was amended in 1978, April 28, P.L. 202, No. 53, §7(2), effective June 27, 1978.

The offense, in this case took place Feb. 10, 1984.

However, trial counsel at such a critical stage of the proceeding did nothing, again, at (pp 123) "please note that you can apply the principle of the conspirator rule as to Mr. Lyles even though he's not personally charged with the crime of conspiracy...

Trial counsel Mr. Johnson posture is similar to that, of counsel in, **Rompilla:**

15

> There is an obvious reason that the failure to examine
> **Rompilla's** prior conviction file fell below the level of
> reasonable perfomance. Counsel knew that the Commonwealth
> intended to seek the death penalty by proving **Rompilla** had
> a significant history of felony convictions indicating the
> use of threat of violence, an aggravator under state law.
> Counsel further knew that the Commonwealth would attempt to
> establish this history by proving **Rompilla's** prior
> conviction for...there is no question that defense counsel
> were on notice since they acknowledged that a "plea letter"
> written by one of them four days prior to trial...

The thrust of this posture is that here as there, counsel

performance in this instance should be measured by what he knew,

as here, trial counsel knew his client was not charged with

conspiracy, and that the court, relieved the states burden of

proof beyond a reasonable doubt, and announced the guilt of the

petitioner when, it asserted, "Lyles and Boyd, although they did

not possibly throw the instrument...they are just as accountable

for their criminal act..."

Trial counsel's incentive to object is based upon the fact

that his client was not charged with conspiracy, thus, the

established proposition of the case was fundamentally altered,

any sound initial trial strategy was dissipated by the

instruction, where defense was clearly established absent a

conspiracy theory of liability.

Had counsel objected, a curative instruction would have had to

issue with the potential to balance the standard of proof for

acquittal with that of the guilt announced by the court to the

point in the proceeding where the objection was lodged.

That is, if such curative instruction would have been made,

however, no objection was lodged, and no curative instruction was

made.

16

The petitioner can only speculate as to whether a curative instruction would have repaired the harm, and would still contend that the outcome of the proceeding would have been different, giving the jury an opportunity to weigh the evidence in the proper context of applicable law.

Because trial counsel was constitutionally ineffective, the petitioner's conviction rest upon principles similar to those announced, in, **Sandstrom v. Montana**, 99 S.Ct. 2450, 442 U.S. 510 (U.S.Mont.1979), holding, that: "Conclusive presumptions conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime, and they invade the fact-finding function which in a criminal case the law assigns to the jury;" comparing:

> First, a reasonable jury could well have interpreted the presumption as conclusive, that is, not technically as a presumption at all, but rather as an irrebuttable direction by the court to find intent once convinced of facts triggering the presumption. Alternatively, the jury may have interpreted the instruction as a direction to find intent upon proof of the defendant's voluntary actions (and their "ordinary" consequences), unless the defendant proved contrary by some quantum of proof which may well have been considerably greater than "some" evidence--thus effectively shifting the burden of persuasion on the element of intent...Id. 2456.
> **Carella v. California**, 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989), a mandatory presumption-a specific instruction that "both alone and in the context of the overall charge, could have been understood by reasonable jurors to require them to find the presumed fact if the state proves certain predicate facts--violates the Fourteenth Amendment because it "directly forecloses independent jury consideration of whether the facts proved established certain elements of the charged offense...and relieves the state of it's burden of...proving by evidence every essential element of the crime beyond a reasonable doubt.

Here, to establish the elements of the offense charge, the

court instructed the jury, that such could be proved by the conspiracy rule, even though the petitioner was not charged with that offense. Thus, accord:

## ACCOMPLICE LIABILITY

The court in closing it's definition of "accomplice liability," assert:

> In conclusion, you may find the defendant guilty of the crimes in this case, "arson and some degree of criminal homicide," on the theory they were accomplices, as I have defined and explained that theory of criminal responsibility to you, as long as your satisfied beyond a reasonable doubt that:
> Nubmer One, the crime was committed in this case; and
> Number Two: you're satisfied on the basis of the records that one or both of the defendants were accomplices to someone else or one or both defendants on the basis of the evidence in the record were accomplices to each other.
> As a matter of law, I will repeat it.
> Please note that you can apply the principle of the conspirators rule as to Tyrone Lyles even though he's not personally charged with the crime of conspiracy, as in the case of Boyd.
> But note well that you are not to apply the conspirator rule as to Lyles unless the evidence establishes all the elements of the crime of conspiracy as to him, even absent the criminal information on the charges.
> On the other hand, if you find no prior agreement amounting to a conspiracy as to both Boyd and Lyles, you can find that Boyd and Lyles were accomplices.
> Thus you could find that Boyd was an accomplice even if there is no proof of the substantive element of the **crime of conspiracy contained in the single criminal information that was brought against Lyles, Boyd alone.**
>
> Under those circumstances, although the defendant cannot be found guilty of the charge of conspiracy per se due to absence of criminal information charging same, he can nonetheless be found criminally responsible for the act of others under the theory of criminal liability called the co-conspirator rule.(N.T. 123-125).

In Pennsylvania, in, **Com v. Huffman**, 536 Pa. 196, 638 A.2d 961 (1994), "an accomplice cannot be convicted of first degree murder if he does not have a "specific intent to kill."

Here, the court, has just relieved proof of the "specific intent to kill" required under 'accomplice liability principles, by insisting such principles could be shifted through the 'co-conspirator rule as to Lyles, i.e. petitioner. Thus, compare:

> **Martinez v. Garcia,** 379 F.3d 1034 (C.A.9 (Cal.) 2004), stating:
> Jury instruction on alternative theory of transferred intent in prosecution for attempted murder of two victims amounted to structural error, and thus, was not subject to harmless error analysis; instruction permeated fundamental structure of trial, by permitting the jury to convict on two alternative theories, one which was an impermissible legal ground, where it could not be discerned on which ground jury acted.

The court in justification of and support of it's "co-conspirator rule," assert that: what is called the co-conspirator rule or doctrine was applicable law at the time pertinent to this case; even though there was a change in the statutory law..., the rule is still the available doctrine in Pennsylvania.

The petitioner would accord such posture to the analysis of, **Smith v. Horn**, 120 F.3d 400 (C.A.3 (Pa.) 2004), where the state attempted to argue a similar posture, asserting in a reply brief:

> that a shared intent to enter into a conspiracy to commit a crime is sufficient to confer criminal liability for a killing that is the natural and probable result of the conspiracy, even if the killing were not shown to be specifically intended by defendant. citing, **Com v. Roux**, 465 Pa. 482, 350 A.2d 867, 870 (1976); **Com v. La**, 433 Pa.Super 432, 640 A.2d 1336, 1345-46 (1994).

The Court, held, neither of those cases involved first degree murder; noting that in **Huffman**, the dissent was criticized for for relying on cases...of lesser degrees of murder.

Here the petitioner was not charged with conspiracy, however, the court gave the jury the opportunity to confer 'co-conspirator criminal liability to establish intent 'for the arson

19

and murder. Thus, accord:

### FIRST DEGREE MURDER CHARGE

Here, the fundamental issue of culpability, is hedged in the court's instruction, that, "if you believe that there is sufficient evidence in the case to prove that Lyles absent criminal information or in conspiracy did conspire with other people, you would prove a theory of accountability," where the petitioner was not chardged with conspiracy.

Pennsylvania in, **Com v. Jones**, 355 Pa. 522, 50 A.2d 317 (1947), hold: "the specific intent to take life supplies the 'willfulness, deliberation and premeditation essential to first degree murder."

Accord, **Smith**, "Under Pennsylvania law, both today and at the time of **Smith's** trial, an accomplice or co-conspirator in a crime during which a killing occurs may not be convicted of first degree murder unless the Commonwealth proves that he harbored the specific intent to kill; comparing:

> **Com v. Bachert**, 453 A.2d at 933-34, the evidence showed that the defendant and a cohort committed a kidnapping and robbery, during the course of which the cohort killed the victim. The Pennsylvania Supreme Court wrote that to constitute first-degree murder, the evidence had to show beyond a reasonable doubt that the defendant harbored "a specific intent to kill."
> In, **Huffman**, 638 A.2d at 962, the trial court advised the jury that:
> in order to find defendant guilty of murder in the first degree, you must find that the defendant caused the death of another person, or that an accomplice or co-conspirator caused the death of another person. That is, you must find that the defendant's act or the act of an accomplice or co-conspirator is the legal cause of the death of [the victim], and therefore you must determine if the killing was intentional.
> This, the Pennsylvania Supreme Court held, was, "patently

erroneous" and "an outright misstatement of the law on a
fundamental issue relating to culpability. Id...

Thus, accord the court's instruction:

> (N.T. pp 153-160)
> ...as to the introduction of the relevant evidence, we're
> solely concerned with that type of murder of the first
> degree which pertains to homicide committed by intentional
> killing or homicide   which the slayer entertained. The
> required 'willful, deliberate, premeditated specific intent
> to kill at the time he has taken a life.
> Therefore, in order for you to find the defendant guilty of
> murder of the first degree, you must find that the killing
> was a willful, deliberate, premeditated act.
> You must ask yourself the question:
> Did   the   defendant   have   the   willful,   deliberate,
> premeditated, specific intent to kill at the time of the
> killing ?

Here, the court has clearly, used "premeditation" to supply
the 'specific intent to kill.

Now you must ask yourself; did the defendant have the
'willful, deliberate, premeditated specific intent to kill at the
time of the killing ?

**Jones**, clearly state, that 'specific intent to kill, supplies
the willfulness, deliberation and premeditation essential for
first degree murder.

Premeditation as Conspiracy both at its core means "plan."

Throughout the course of the trial the court has instructed
the jury, that the 'co-conspirator rule had to be transferred
because the petitioner was not charged with such crime, thus if
they believed the state proved a common plan or design, then
apply that rule, accord, **Rose v. Clark**, 106 S.Ct. 3101, 478 U.S.
570 (U.S. Tenn. 1986), conveying:

> A jury that receives a constitutionally flawed, burden-
> shifting instruction on intent is, in effect, directed to
> return a verdict against the defendant...the erroneous
> instruction invites the jury to abdicate its constitutional

21

> responsibility to decide for itself whether the State has
> proved every element of the offense beyond a reasonable
> doubt. It's likely that jury will accept this invitation
> because there is no reason to believe the jury would have
> deliberately undertaken the more difficult task, of
> evaluating the evidence of intent, when offered the
> opportunity simply to rely on a presumption. **Sandstrom &
> Connecticut v. Johnson**, 460 U.S., at 85, 103 S.Ct. at 976.

The principle from **Rose v. Clark,** would attend the fact that

"the ordinary jury adheres to the courts instruction, and there

is no reason to believe that the 'lay jury will know enough to

disregard the judge's bad law if in fact he misleads them."

It is impossible to discern whether the petitioner was

convicted of "first degree murder," under an accomplice or co-

conspirator theory of liability, where the jurors were instructed

to, "even absent a verdict of guilty on criminal information

charging conspiracy, you can apply that application over as to

Lyles..."

Throughout the course of instruction, the court would

reiterate, "please note, you can apply the co-conspirator rule to

Lyles." culminating in:

> Under those circumstances, although the defendant cannot be
> found guilty of the charge of conspiracy per se due to
> absence of criminal information charging same, he can
> nonetheless be found criminally responsible for the act of
> others under the theory of criminal liability called the
> co-conspirator rule.

And then, unleash, 'now you must ask yourself, 'did the

defendant have the 'willful, deliberate, premeditated specific

intent to kill at the time of the killing ?

Accord, **Smith,** "A jury instruction that omits or materially

misdescribes an essential element of an offense as defined by

state law relieves the state of its obligation to prove facts

22

constituting every element of the offense beyond a reasonable doubt, thereby violating the defendant's federal due process rights. citing, **Carella**.

Here, not only has the court misdescribed the constitution of "first degree murder," as if "premeditation establishes the required specific intent to kill." But failed altogether to elaborate the requisite intent necessary to enter into a conspiracy, as to the arson or murder.

Without a proper preamble, the state has literally convicted through the principle that 'a person intends the natural and probable consequences of his acts, in the manner of **Smith**, "an accomplice for one purpose is an accomplice for all purposes, "through a transferred intent." emphasis added. Accord, (Appx. A. Jury Instruction).

## VOLUNTARY MANSLAUGHTER

The court begins by announcing that, 'instruction on voluntary manslaughter is given in every case if such instructions are requested by the defendant. Such instructions are to be given notwithstanding the absence of any evidence in the record to support such instruction for voluntary manslaughter.

This mandate from the Supreme Court of Pennsylvania is based on the historical, time honored doctrine that it's always been within the mercy dispensing and compassionate power of the jury to bring a verdict of guilty of voluntary manslaughter in any case of murder...you do have the power to be lenient.

During the course of instruction on "manslaughter" the court

inserts the following:

> This court is about to give its opinion on whether or not the facts supported by the evidence in this case show the defendant committed voluntary manslaughter, that is provocation, passion in manslaugther.
> Clearly, please understand that your not bound by my opinion.
> Your the fact-finders.
>
> If you return a bill of voluntary manslaughter, even if the facts do not show the defendant is guilty of that crime--I'm not prevailing upon you in making the following statement--but it's the opinion of this court that there is really little, if any, evidence of the crime of voluntary manslaughter in this case.
> **But my statement to you is an opinion with respect to the evidence which you are in no way, shape or form bound to comply with and which you are not bound.** (N.T. pp 175.)

As an initial matter 18 Pa.C.S.A.§ 2503, comments, that, 'when malice is not established, the courts have had the problem of determining whether the homicide is voluntary or involuntary.

The posture set in the crimes code, dismisses, the court's lenient and mercy orientated, analysis, and has provided test to accommodate the courts problem in absence of malice through:

> **Com v. Voytyo**, 349 Pa.Super 320, 503 A.2d 20 (1986), The ultimate test for adequate provocation is whether a reasonable man, confronted with a series of related events, became impassioned to the extent that his mind was incapable of cool reflection.

Ultimately, any homicide absent malice is manslaughter, and it's not a lenient historical doctrine of mercy for a jury to find compassion, for murder under Pennsylvania law.

But, a vehicle, for the state to convict a defendant of murder even in the absence of malice.

There are clearly cases, where a request for such an instruction could rise to a level of absurdity but this was not the case, especially here where the jury could have brought back

such verdict, based on the evidence.

Here the court has already directed that:

> ...although they did not "possibly" throw the agency,
> instrumentality, bomb that caused the death in this case,
> they are just as accountable for their criminal act of
> arson and murder generally. (N.T. pp 106)

Such posture, while directing the jury to the petitioner's
guilt.

The court's direction still had the potential to negate the
appearance of malice, where the law clearly announces that an
"accomplice for one purpose is "not" an accomplice for all
purposes," which holds true for conspiracy.

Here, as applicable to the petitioner based on the evidence,
if anything to be inculpated with, would have been recklessness
or gross negligence.

This alternative theory of defense was available because the
established proposition of the state's case was based on the
petitioner as "not" being the principle of the act, nor a co-
conspirator, but tenuously as an accomplice, thus, an accomplice
to what ?

Based on the evidence of the state's case, Mr. Johnson, trial
counsel requested an instruction on involuntary manslaughter at
(pp 9, Jury Instruction), however, the court denied such motion,
the court asserted that it had already stated it's feelings for
the instruction.

Pursuant to §2504(a), which hold:

> (a) General Rule.- a person is guilty of involuntary
> manslaughter when as a direct result of the doing of an
> unlawful act in reckless or grossly negligent manner, or
> the doing of a lawful act in a reckless or grossly
> negligent manner he causes the death of a another person.

25

Here, nothing in the true facts of this case negated a "heat of the moment defense that the petitioner for that particular time was incapable of cool reflection," especially here where the evidence could not prove the petitioner was capable of cool reflection.

However, the court never gave the jury such chance, when it inserted it's opinion.

By eliminating the lesser charges of the indictment, the court has set the opportunity to convict under the higher offenses charged. Where, now, the element of malice is a foregone conclusion.

Here, the court would offhandedly dismiss legit charges of the indictment, but insist the jurors apply the elements of conspiracy, even when it finds the law did not support the theory if the defendant was not charged with such crime. Thus, compare, **Powell v. Galaza**,:

> An instruction that the only contested element has been satisfied cannot be reviewed for harmless error because the wrong entity, the judge rather than the jury, is responsible for rendering the verdict; that is, the guilty verdict cannot be said to emanate from the jury because the judge has made the one factual finding on which the verdict rests. Id. at 558.

In regards to the petitioner Mr. Lyles, ultimately, the only relevant element he had to contest was that of "malice," and the court, by eliminating the lesser charges of the indictment established the "malice," required to convict under the higher offenses charged, in the manner expressed by the court's instructions up to this point.

The court denied the instruction on 'involuntary manslaughter,

26

however, a viable defense existed under that charge.

Thus, the argument could have been advanced that, "in the reckless and gross negligent effort to set the fire, he inadvertently caused the death of another person," thereby, giving the jury the option of the indictment to charge the petitioner with arson, and involuntary manslaughter for the death.

Arguing he did not intend the natural and probable consequences of his acts as the law prescribes, therein, causing the state to prove the "intent" that necessarily flows from malice, 'use of a weapon upon a vital part of the body.'

The position of voluntary manslaughter is not dissimilar, he could have been riled up to go with, or could have just walked with the parties not knowing their intent to set the fire, once that act was done, he was incapable of acting, thus, coolly reflecting upon what to do at that moment.

Accord, **Com v. Sero**, 466 Pa. 224; 352 A.2d 30; 465 (Pa. 1976), announcing:

> The use of a deadly weapon on a vital part of the body, is merely a presumption of fact that permits the jury to find intent, from the use of a deadly weapon. Id. 466 Pa. 238.

Thus, the relevant question, is "intent" of what ?

Third degree murder, intent to inflict serious bodily harm, or first degree murder, specific intent to kill, to this extent, Pennsylvania law provides an inference of "intent" to be drawn from the use of a deadly weapon on a vital part of the body, for two different degrees of murder.

Thus, compare, **U.S. v. McDonald**, 576 F.3d 1350 (C.A.9 (Ariz.

1978), considering the judicial role:

> Judicial role extends to examining witnesses to clarify
> evidence and to controlling trial and its participants so
> as to minimize confusion and delay while maximizing
> orderly, clear and efficient presentation of evidence, but
> judge must be aware of his sensitive position and be on
> guard to avoid even appearance of advocacy or partiality.

Thus, accord:


## CLOSING ARGUMENT

In the closing argument, the prosecutor assert:

> (N.T. pp 75-76):
> ...is there not premeditation at this point when you tell
> your friend to stay out.
> (pp 101): as for Mr. Lyles you can use conspiracy and
> accomplice liability as explained by the judge...
> (pp 104-105): first degree murder means through your
> premeditated plan, willful conscious action take the life
> of somebody with malice.
> Now premeditation means you had time to think about it, you
> had time to decide whether--whether you have time to
> decide, whether you were going to what you in fact did.
> And in this case this isn't a premeditation that occurred
> in a minute or two minutes, which is sufficient under the
> law.
> This is a premeditation which occurred over a long period
> of months, so there you have the facts.

Accord, **U.S. v. Begay**, 567 F.3d 540 (C.A.9 (Ariz.) 2009),

stating:

> The misrepresentations that the prosecution made to the
> jury may have had an even more serious consequence. The
> governemnt's erroneous statement at closing argument may
> well have resulted in **Begay's** convictions for first-degree
> rather than second-degree murder. In a clearly incorrect
> statement of the law, the trial prosecutor told the jury,
> **Begay** intended to kill the occupants of the vehicle. That's
> premeditation.
> The prosecutor later reiterated, "when you fire multiple
> rounds with a rifle into a vehicle..., that establishes an
> intent to kill, that establishes his premeditation." Of
> course, it is elementary that intent to commit murder does
> not establish premeditation. To the contrary, whereas
> intent is a necessary element of both first-degree and
> second-degree murder, premeditation is what distinguish
> first degree murder from second degree murder.

Here, in the manner of, **Begay**, the serious consequences of the prosecution misrepresentation of the constitution of first degree murder, is attended in the fact that the court, instead of correcting the erroneous statement, it 'adopted it.

Thus, consider, even though the prosecutor could not establish that the petitioner "entered into a conspiracy," to charge such on the indictment, he asserts that, "as for Lyles you can use conspiracy and accomplice liability as explained by the judge..."

The afore jury instructions has thus demonstrated, the judge's saturation of the jurors with directions like: "please note that you can apply the principle of the conspirator rule as to Lyles...etc."

The prosecutor, misrepresented first degree murder as, "first degree murder means through your premeditated plan, willful conscious action take the life of somebody with malice."

The court, echo's, "we're solely concerned with that type of murder of first degree...which the slayer entertained. The required willful, deliberate, premeditated specific intent to kill at the time he has taken a life."

The court further asserts, "you must ask yourself the question: did the defendant have the willful, deliberate, premeditated, specific intent to kill..."

The prosecutor assert, "the premeditated plan, willful conscious action take the life of somebody with malice."

To establish "malice" the court eliminated the lesser charges of the indictment.

The court refused trial counsel's motion to instruct the jury

29

on involuntary manslaughter which was charged on the indictment, even though an alternative theory of defense existed under that charge based on the established proposition of trial counsel's assessment of the case, which would have mitigated the presumption of "malice."

In opening it's instruction on voluntary manslaughter, the court announce's that: "this mandate from the Supreme Court of Pennsylvania is based on historical, time honored doctrine that it's always been within the mercy dispensing and compassionate power of the jury to bring a verdict of guilty of voluntary manslaughter in any case of murder...you do have the power to be linient."

Here, the court, by instructing the jury that a verdict of manslaughter served a compassionate lenient power for them to show mercy, instead of stating the law that any murder committed in Pennsylvania in the absence of "malice" is termed involuntary or voluntary "manslaughter," effectively established "malice."

By alluding to a power to provide linience, to the petitioner it appears to shift sympathy and compassion to the deceased, similar to the terms of, **Sandstrom:**

> Alternatively, the jury may have interpreted the instruction as a direction to find intent upon proof of the defendant's voluntary actions (and their ordinary consequences), unless the defendant proved contrary by some quantum of proof which may well have been considerably greater than "some" evidence--thus effectively shifting the burden of persuasion on the element of intent. Id. at 2456.

What the petitioner would attempt to state is that, the court's posture, had the power of shifting a considerable burden of persuasion in a sense to disprove the court theory of jury

30

mandated power for linience, by shifting a burden of persuasion on "malice."

The only defense for such posture would have been an objection from which a curative instruction could have or may not have issued clarifying the law.

Of most import here, is that, it's as if the prosecutor identified the weaknesses, holes in the case, and the court covered them up, eliminated them, thus, consider, U.S. v. McLain, 823 F.2d 1457 (C.A.11 (Fla.) 1987), Id. at 1461-62, holding:

> Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. Smith v. Phillips, 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982), on remand 552 F.Supp. 653, (S.D.N.Y.1982), aff'd, 717 F.2d 44 (2d Cir.1983), cert denied...
> Also it is acceptable for courts to sheperd along "an uncomplicated trial of fairly basic issues [showing] only judicial economy rather than prejudicial intervention...

There is a substantial likelihood, that the jury, absent instruction to the contrary, followed and convicted on the prosecutor's erroneous statement of law, because it was the prosecutor who invoked the co-conspirator liability and the consequential transference of that intent as directed by the judge. Thus, accord:


## COUNSEL

It was objectively unreasonable for trial counsel not to object to the prosecutor's closing statement, "as to Lyles, you can use conspiracy and accomplice liability as the judge explain."

Here, in the manner of, **Rompilla**, trial counsel's perfomance in this instance must be weighed by what he knew.

What trial counsel knew was that his client was not charged with conspiracy, so it follows that it was objectively unreasonable for such counsel to not object to the prosecutor's misstatement of applicable law as to his client.

The prejudice from trial counsel's failure to object to such assertion is that not only by the failure to object raised a possibility that the jury could have followed the direction in the manner **of Begay**, it is also the fact that such failure allowed the court to give the instructions unhindered.

If trial counsel would have objected to the prosecutor's statement, a curative instruction clarifying the law, that the conspiracy theory in whole could not apply to Mr. Lyles 'may have issued, thereby eliminating the instructional error at its inception.

Again, trial counsel at the end of the jury instructions had an opportunity to cure the defective instructions at (pp 178-180), consider:

> (Conference out of the presence of the jury, after instructions)
> (Mr. Hemphil, co-defendant's att'y.).
> On the record I take exception to the conspiracy and accomplices and all that you told them about being an accomplice and aiding and abetting and if they consulted or if they by words or deeds induced and all the rest of it.
> I fear that you are going to have a jury out there that felt because of your extended charge on conspiracy and accomplice and vicarious liability--that they will feel that your telling them that at least these two guys, these two defendants were accomplices.
> I think your going to find when you read your charge that the word accomplice is stated and restated over and over and over again to a point where I think it almost tells the jury in your opinion that these fellows were accomplices at the least.

(The Court): I note your objection.
But everytime with respect to murder I did read accomplice.
I didn't make any reference other than what the statutory
language was with no emphasis.
If I was reading the statute verbatim and said accomplice,
I read it.
(Trial Counsel Mr. Johnson): I have nothing to add.

Here, trial counsel Mr. Johnson, was just put on notice, 'if
he was unaware that the court in effect was directing the
verdict, he was at this point, but assert he had nothing to add,
where his client was not charged with conspiracy as was the co-
defendant, and at this most critical stage, his last opportunity,
failed to request that the jury be re-instructed as to his
client, fell below an objective standard of reasonableness.

Based on what trial counsel knew, it was unprofessional error
in failing to request the jury be re-instructed, where there is a
reasonable probability that the outcome of the trial would have
been different. Had the jury been re-instructed on how the law
had to be applied to the petitioner.

Thus, the ultimate prejudice is attended by the fact that the
failure to object or request the jury be re-instructed, relieved
the state of it's due process burden of proof beyond a reasonable
doubt of every fact essential of the crime charged.

In such context, trial counsel was constitutionally
ineffective.

## POST-VERDICT MOTION COUNSEL

After the evidentiary portion of the trial, trial counsel Mr.
Johnson was dismissed from the case and Ms. Marilyn Gelb was
appointed to represent the petitioner for post-verdict motions.

Because this portion of the proceeding deals with the factual

33

record of the objected trial errors, the petitioner believes Ms.
Gelb's performance should be measure based on her investigation
of the developed record of the trial available to her, in the
manner of, **Hummel v. Rosemyer**, 564 F.3d 290 (C.A.3 (Pa) 2009),
asserting:

> Strategic choices made after less than a complete
> investigation are reasonable precisely to the extent that
> reasonable professional judgments support the limitations
> on the investigation. In other words, counsel has a duty to
> make reasonable investigations or to make reasonable
> decisions that makes particular investigation unnecessary.
> In any ineffectiveness case, a particular decision not to
> investigate must be directly assessed for reasonableness in
> all the circumstances, applying a heavy measure of
> deference to counsel's judgment.

As an initial matter it is necessary to insert the following
transmission from the post-verdict hearing: (N.T. pp 3-5).

> The Court: Mrs. Gelb, he said you did not present certain
> grounds. I showed you a letter that was sent to me
> enumerating four grounds that he says you did not present.
> You have read them; have you not ?
> Mrs. Gelb: Yes Sir.
> The Court: Would you go through the grounds and tell me,
> did he ask you to raise them.
> Mrs. Gelb: I am looking at a letter, which I ask to be made
> a part of this record, addressed to this court in which the
> following grounds are raised:
> (1) Mr. Lyles alleges his rights were violated under the
> Fourteenth Amendment and Rule 1100 because he was arrested
> on Oct. 20, 1984 and did not start trial until June 10,
> 1985, and never requested postponments.
> (2) He also alleged that his trial counsel was ineffective
> for not requesting a severence from Mr. Boyd.
> (3) He further alleged that his court appointed counsel and
> trail judge were in error in not granting the suppression
> motion because his name was never mentioned with having
> anything to do with this matter on the night in question.
> (4) The final ground is that the court, trial counsel and
> the D.A. were in error in not investigating the statement
> of Estavia Johnson, after she was presented as an
> eyewitness, that the statement is inconsistent with the
> alleged eyewitness testimony of another witness and Miss
> Johnson's testimony was inconsistent with other witnesses
> in the case and that if her information had been
> investigated, as Mr. Lyles alleged it should have, we
> wouldn't be going through the situation we are going

> through now with Miss Johnson saying she lied at trial.
> The Court: Had she mentioned that ?
> (Mrs. Gelb: Yes, your Honor. I told Mr. Lyles that I raised
> all the issues which I felt should be raised in the manner
> they should be raised.
> The Court: Those grounds would not have had merit.
> Mrs. Gelb: In a certain sense, I raised issue number (4)...

Such posture is set, to demonstrate that Ms. Gelb's inception
into the case was based on her assessment of her investigation of
the factual record, and not, to specifically effectuate what her
client felt was best, but what she felt was best based on her
investigation of the facts.

To gain a proper perspective, the petitioner would have it
noted that claims not raised in post-verdict motions are
substantially waived for review on direct appeal, and waived
absent an extraordinary showing of counsel's ineffectiveness on
collateral review.

As such, to gauge this matter the petitioner would notice the
following: (N.T. pp 5-6).

> Mrs. Gelb: I read Mr. Lyles dissatisfaction with present
> counsel, requiring me to withdraw.
> The Court: I think not, because if you thought the grounds
> were not meritorious, you don't have to raise them; you
> have discretion whether or not to raise them.
> I will hear oral argument on the motion. Everything has to
> come to an end. If I grant the motion for a new trial, I
> will, in turn, grant you a motion to withdraw. If I deny
> the motion for a new trial, I will sentence him. You can
> take the appeal and then after you have effected the
> appeal, you can withdraw and we will let his appellate
> counsel challenge your effectiveness, so that everything
> will be heard. He can challenge your effectiveness and
> trial counsel's efectiveness and we give him a fresh lawyer
> to find ineffective.

In the usual course of post-verdict motions, the only claims
that can be addresed are those for which an objection was lodged,
in this context Mrs. Gelb was placed in a more unique situation,

because her inception at such stage of the proceeding meant she could raise any claim she felt viable, however, in principle, she only raised those claims that could be gleaned from those Mr. Johnson asserted, with the inclusion of his ineffectiveness.

The context of this matter is to determine the reasonableness of her investigation of the developed factual record.

In the memorandum prepared by Mr. Johnson for post-verdict motions, at isue (1), Mr. Johnson assert that the Commonwealth did not proceed against the petitioner as a co-conspirator, it was it's intention to proceed against him as an accomplice, (pp 2) of such brief.

However, Mr. Johnson did not announce anything about the court focussing on co-conspirator liability rather than that of an accomplice to convict the petitioner.

It is objectively reasonable to assert that Ms. Gelb, knew the charges of the petitioner and co-defendat's indictment, that he was under a general charge of murder and arson and the co-defendant with the murder, arson and conspiracy, it is also objectively reasonable that said counsel was familiar with the states conspiracy statute which hold, pusruant to, 18 Pa.C.S.A.§ 903(d)(2) In any joint prosecution under (1) of this subsection:

> (i) no defendant shall be charged with conspiracy in any county other than one in which he entered into such conspiracy or in which an overt act pursuant to such conspiracy was done by him or by a person whom he conspired with; (ii) neither the liability of any defendant nor the admissibility against him of evidence acts or declarations of another shall be enlarged by such joinder; and (iii), the court shall order a severance or take special verdict as to any defendant who so requests, if it deems it necessary or appropriate to promote the fair determinastion of his guilt or innocence, and shall take any other proper measures to protect the fairness of the trial;

(e) Overt Act.- No person may be convicted of conspiracy to commit a crime unless an overt act in pursuant of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

The petitioner at issue (2) of the claims he wanted raised, asserted that: trial counsel was ineffective for not requesting a severance from Mr. Boyd.

It should be noted that Ms. Gelb never stated the issue was without merit, she stated, that she raised the issues which she felt should be raised in the manner they should be raised.

The court, announced those grounds would not have had merit, and again would assert when Ms. Gelb requested to withdraw, asserts, I think not because if you thought the grounds were not meritorious, you don't have to raise them...

Ms. Gelb, on the court's second inquiry would not state that such claim lacked merit, because the claim was substantial in the context of the overall posture of the trial, thus consider the statute at (ii) and (iii) which state:

(ii) neither the liability of any defendant nor the admissibility against him of evidence acts or declarations of another shall be enlarged by such joinder;
(iii) the court shall order a severance or take special verdict as to any defendant who so requests, if it deems it necessary or appropriate to promote the fair determination of his guilt or innocence, and shall take any other proper measures to protect the fairness of the trial.

The factual record of this case was "shockingly" permeated with how the application of the co-conspirator rule should be applied to the petitioner, such assertions were extensive to say the least.

The extensiveness of such assertions are touched upon by co-defendant's counsel at the end of the jury instructions.

37

Here, the language employed by Ms. Gelb intimates, that after a thorough investigation she raised the claims she wanted and the way she wanted them raised.

However, here, to mitigate the court's jury instruction, stands an issue that could have substantially changed the outcome of the proceeding, definatively the direct appeal.

A reasonable investigation of the factual record would have shown that the court instructed the jury on subsections A and erroneously announced B to define an overt act of conspiracy, the "joint prosecution, subsection," was here, inserted to demonstrate that even a person charged with conspiracy, can be substantially prejudiced by an overlap of a co-defendant's charges, to show that such matters relieves the state of it's quantum of proof beyond a reasonable doubt.

And more importantly, the statute provides for severance of defendants charged with conspiracy, to protect the integrity and fairness of a particular trial.

Here, it is objectively reasonable to assert based on the factual record that Ms. Gelb, did in fact have a thorough viewing of the recorded transcript, where at (pp 19, Post-Verdict Motion brief), her argument carries into the jury instructions immediately preceding the court's extensive diatribe of the co-conspirator application of law.

In fact its not that the interest the petitioner sought to be advanced didn't have merit based on the factual record, as she refused to state when given the opportunity to state they lacked merit, she discarded them to raise what she felt, establishing

a floor to measure the reasonableness of her performance in light
of the available facts.

To the extent of counsel's position in this matter the
petitioner would announce such posture through a comparison of,
**Aparicio v. Atuz**, 269 F.3d 78 (2nd Cir. 2001), holding:

> The Sixth Amendment commands that "in all criminal
> prosecutions, the accused shall enjoy the right...to have
> the assistance of counsel for his defense. U.S. Const.
> amend. VI. When an appeal is authorized, states must
> provide indigents with counsel for their first appeal as of
> right. **Douglas v. California**, 372 U.S. 353, 358, 83 S.Ct.
> 814, 9 L.Ed.2d 811 (1963). This right to counsel requires
> more than ensuring that counsel appears on the defendant's
> behalf. The right to counsel is the right to the effective
> assistance of counsel. **McMann v. Richardson**, 397 U.S. 759,
> 771 n. 14, 90 S.Ct. 1441, 25 L.ED.2d 763 (1970).
> ...Although it was born in the context of ineffective
> assistance of trial counsel, **Strickland's** two-prong test
> applies equally to claims of ineffective assistance of
> appellate counsel on a defendant's first appeal as of
> right. **Evitts v. Lucey**, 469 U.S. 387, 396-97, 105 S.Ct.
> 830, 83 L.Ed.2d 821 (1985).
> As to the first prong of the **Strickland** test-deficient
> performance--it is not sufficient for the habeas petitioner
> to show merely that counsel omitted a nonfrivolous
> argument. Counsel is not obliged to advance every
> nonfrivolous argument that could be made. **Evitts**, 469 U.S.
> at 394, 105 S.Ct. 830; **Jones**, 463 U.S. at 754, 103 S.Ct.
> 3308 (1983). **Strickland** installed no rigid requirements; it
> created only an "objective standard of reasonable" for the
> assessment of attorney performance. 466 U.S. at 688, 104
> S.Ct. 2052.
> In making that assessment, we must "indulge a strong
> presumption that counsel's conduct falls within the wide
> range of reasonable professional assistance," and be
> watchful "to eliminate the distorting efects of hindsight."
> **Strickland**, 466 U.S. at 689, 104 S.Ct. 2052.

The right to counsel requires more than ensuring that counsel
appears on the defendant's behalf.

In this context it is necessary to note that the petitioner
and Ms. Gelb endured a conflict of interest that was not
constitutionally evaluated, and toward such content it is
necessary to re-iterate the court's purpose of Ms. Gelb's

appointment, consider:

> Mrs. Gelb: I read Mr. Lyles disatisfaction with present
> counsel, requiring me to withdraw.
> The Court: I think not because if you thought the grounds
> were not meritorious, you don't have to raise them; you
> have discretion whether or not to raise them.
> I will hear oral argument on the motion. Everything has to
> come to an end. If I grant the motion for a new trial, I
> will, in turn, grant you a motion to withdraw. If I deny
> the motion for a new trial, I will sentence him. You can
> take the appeal and then after you have effected the
> appeal, you can withdraw and we will let his appellate
> counsel challenge your ineffectiveness and trial counsel's
> ineffectiveness and we give him a fresh lawyer to find
> ineffective.

What is apparent from this transmission, is that counsel's
role as an appellate counsel is defined as beginning once this
proceeding is over.

However, the court would still move on and define counsel's
role in the post-verdict motion under the terms of appellate
counsel responsibility, where counsel does not have an obligation
to raise every non-frivolous issue.

And lastly, the court did not appoint such counsel in a manner
consistent with that envisioned by the Sixth Amendment, which
required more than a mere formal appointment, an attorney that's
only there in appearance for the defendant.

Under Pennsylvania law, pursuant to, **Com v. Cross**, 535 Pa. 38,
636 A.2d 173, 176 (1993), "counsel cannot override what the
client considers to be in his best interest."

Thus, even if it was not clear to Ms. Gelb, as to her specific
capacity, because the court failed to define it properly, what is
clear, is that Ms. Gelb did not seek to effectuate the
petitioner's interest at all from her inception in the case.

As a result, the waiver of the petitioner's substantial errors

of trial were waived, and waiver for failure to raise a claim in post-verdict motions is something known well to all Pennsylvania attorneys.

It was thus, objectively unreasonable for Ms. Gelb to disregard the petitioner's interest, knowing those matters would be waived from the direct review process, especially, where the petitioner's interest in "severance" was predicated upon the fact that he had to stand trial with a co-defendant who's charges overlapped the case against him and denied him a fair and impartial trial.

Had Ms. Gelb, just communicated with the petitioner prior to the proceeding, there's a reasonable probability that the outcome of the proceeding would have been different, however, the failure to communicate broke down the potential for any attorney client relationship and prejudiced the petitioner in the post-verdict motion hearing and direct appeal. Accord (Appx. B, Substantial Trial Counsel Claims).

Had Ms. Gelb, followed the factual record, as the facts dictate she was aware of, by raising the initial argument Mr. Johnson set up, which clearly asserted that the petitioner was not charged with conspiracy, and articulated the sufficiency of evidence claim, there was a reasonable probability that the outcome of the proceeding would have been different, however, for one reason or another she failed to follow through with such claim.

As such, the petitioner had to wait to raise his ineffective at trial counsel claims at the PCRA level, which standard is more

41

restrictive than direct appeal.

Counsel claims under the PCRA act are restrictive, in that they require proof of counsel's ineffectiveness by a preponderance of evidence, and in this instance, the petitioner had to prove two trial attorney's ineffectiveness. Thus, compare, **Wilson v. Mazzuca**, WL 1767633 (C.A.2 (N.Y.) 2009), asserting:

> Errors satisfying performance prong of **Strickland** test for ineffective assistance of counsel include omissions that cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness. U.S.C.A.Const.Amend 6.
> The prejudice prong of the **Strickland** test for ineffective assistance of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.
> ...the reasonable probability standard is not the same as, and should not be confused with, a preponderance of the evidence that but for the error things would have been different...a reviewing court looks instead to whether "the probability of a different result is, 'sufficient to undermine confidence in the outcome' of the proceeding. Id. **15

Because Ms. Gelb, failed to preserve the substantial errors of Mr. Johnson, the petitioner's claims of ineffective assistance of counsel claims, had to be channeled through the PCRA act, where, even-though, his ineffective assistance claims clearly showed that trial counsel's performance strengthened the state's case, he was unable to show such because of PCRA counsel's ineffectiveness, and the PCRA act of itself, who's standard of review go straight to a prejudice by a preponderance of evidence test more restrictive than **Strickland.**

Thus, accord the petitioner's interest with **Martinez:**

## MARTINEZ STANDING

The United States Supreme Court recognized that Arizona does not provide ineffective assistance of trial counsel claims on direct review, and that a prisoner must bring them through an initial collateral proceeding.

In Martinez, his post-conviction counsel did not raise his ineffective assistance of counsel claim in the first collateral proceeding, and filed which amounted to a no-merit letter as to that claim.

Martinez, represented by new counsel filed a subsequent post-conviction relief petition alleging ineffective assistance of trial counsel, which was dismissed, where the state rule bars relief on a claim that could have been raised in a prior proceeding.

As such, he recognized that because his claim was denied on an independent state procedural rule, under the doctrine of procedural default, the federal court would be prohibited from reaching the merits of his claim. And argued, his cause for the default was because his initial-review counsel was ineffective for failing to raise the claim in the first instance. Id. at 1314-15.

The Court, took such context and asserted:

> By deliberately choosing to move "trial-ineffective-assistance claims outside of the direct-appeal process, where counsel is constitutionally guaranteed, the State significantly diminshes prisoner's ability to file such claims." It is within the context of this state procedural framework that counsel's ineffectiveness in an initial-review collateral proceeding qualifies as "cause" for a procedural default. Id. 1318.

Pennsylvania's PCRA act, is an established state procedural

43

rule that can potentially prohibit a federal court from hearing certain claims, when a petitioner fails to meet its procedural requirements, whether, a term of its jurisdictional mechanism, or procedural ground for relief, its a procedural rule of law, independent and adequate to bar habeas relief, however, such terms are not true for ineffective assistance of counsel claims, where the first opportunity to raise such is on collateral review.

Thus, the minimum floor set by the rule of Martinez, is established at Id. 1318, where, "ineffective-at-trial claims were moved outside of the direct-appeal process."

Thus, the petitioner's standing in the Martinez context must be weighed through that specific principle.

Pennsylvania's law has long held that ineffective-assistance of trial counsel claims must be raised at the first opportunity, which posture may stand unique to Pennsylvania per se, thus, consider:

In Pennsylvania, after the evidentiary portion of trial, after a verdict is rendered, a petitioner is entitled to evidentiary development of those portions of the trial preserved through objections during the course of trial, called post-verdict motions, it is here where those claims for direct appeal are presented and prserved.

During the usual course of matters, a petitioner often has trial counsel as post-verdict motion counsel, however, there are those instances where a petitioner, suffers one attorney for trial and another for post-verdict motions.

44

In such a situation, a petitioner's first opportunity to raise trial counsel's ineffectiveness is in the post-verdict motion hearing.

Such counsel's duties has yet to be defined, which interest is of major import, because in the usual course of matters, such counsel becomes direct appeal counsel, thus, the responsibility of said counsel is lodged between governance of trial counsel's duty to effectuate the client's best interest and direct appeal counsel where such counsel does not have to raise every non-frivilous issue, thus consider:

> Com v. Strickland, 452 A.2d 844, 306 Pa.Super 516 (1982), petitioner, who had not alleged existence of any extraordinary circumstances for failing to raise allegation at any time prior to appeal, waived claim that warrant was stale under (PCHA).
> Com v. Hammock, 466 A.2d. 653, 319 Pa.Super 497 (1983), aleged error regarding trial court's failure to grant demurrer was waived where it was not raised in post-verdict motions.

Such matters are asserted to show the precariousness of an attorney's position when said counsel is inserted at post-verdict motions, where the state has failed to define counsel responsibilities, a prisoner in this instance has to raise two trial counsel ineffective claims which has to wait for an initial-review proceeding.

When a trial attorney fails to object to a matter that matter is waived on direct appeal, where post-verdict motions counsel fails to raise a claim that matter is waived on direct appeal, in each scenario, it's by no fault of the prisoner.

Often, when an attorney is inserted at the post-verdict motion stage, they disregard the client's interest altogether, because

the court has not held them to the fact they are still trial counsels in a substantial sense.

The next first opportunity, is found when trial counsel is direct appeal counsel.

The principle here has been held that it would be unreasonable for such a counsel to raise an ineffective-assistance claim against himself. The petitioner, however, would assert that such a posture would disrupt the American adversarial system of justice if trial counsels were permitted to raise ineffective assistance claims against themselves.

As such, when a trial attorney is direct appeal counsel, the first opportunity to raise the ineffective assistance of trial counsel must wait for an initial-review proceeding.

Pennsylvania, in keeping with such theme, announced in, Com v. Grant, 572 Pa. 164, 870 A.2d 726 (2002), "as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel, until collateral review."

Pennsylvania, made this announcement in the full knowledge of it's law, which asserts, in, Com v. Lassen, 659 A.2d 999, 442 Pa.Super 298 (1995), that:

> Direct appeal standard of review does not apply, on appeal from denial of post-conviction relief petition, to determine if direct appeal counsel was ineffective for failing to raise issues not cognizable under (PCRA); if direct appeal standard applied, mere allegation that direct appeal counsel was ineffective for failing to raise issue would result in what is in effect, a second direct appeal and would completely eradicate PCRA provisions relating to cognizability of issues.

What Pennsylvania has done in the first instance, has taken out all claims against direct appeal counsel.

The consequence of this action has channeled all ineffective assistance of trial counsel claims through the PCRA.

Thus, the petitioner would here request this Honorable Court to consider, <u>Williams v. Taylor</u>, 120 S.Ct. 1495, 529 U.S. 362 (U.S. Va. 2000), asserting:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. Take for example, <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
> If a state court were to reject a prisoner's claim of ineffective assistance of counsel on the grounds that the prisoner had not established by a preponderance of evidence that the result of his criminal proceeding would have been different, that decision would have be "diametrically different," "opposite in character or nature," and "mutually opposed" to our clearly established precedent because we held in Strickland that the prisoner need only demonstrate a "reasonable probability that the result of the proceeding would have been different.Id at 1519-20.

Thus, accord, 42 Pa.C.S.A.§ 9543 (a) General Rule:

> To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following:
> (2)(ii) Ineffective assistance of counsel which, in the circumstances of the particular case so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

In a proper context, when an ineffective assistance of counsel claim is denied on the merits in Pennsylvania, that claim, in effect is actually rejected because the petitioner failed to prove by a preponderance of evidence 'counsel's ineffectiveness.

In fact the express language of §9543(a)(2)(ii), speaks in terms of structural error "no reliable adjudication of guilt or innocence," means a prisoner has to prove by a preponderance of evidence that the outcome could only be speculated, i.e. no reliable adjudication of guilt or innocence could have taken

47

place," and this is just the threshold showing to determine the eligibility for relief.

As a matter of state law, such posture is viable to deny relief in the state courts, however, such standards does not place constraints upon the federal courts from hearing such claims because the state rule stands beyond the scope of Strickland, which, only requires demonstration of 'a reasonable probability that the result of the proceeding would have been different."

To state the obvious, in contravention of Strickland, for a prisoner in Pennsylvania to be eligible for PCRA relief, he must prove prejudice by a preponderance of evidence.

The Strickland test, requires:

> (1) to establish deficient performance, a defendant must show that counsel's representation fell below an objective standard of reasonableness; (2) to establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Strickland's standard of ineffectiveness, is not a cognizable ground for relief in the plain language of §9543(a)(2)(ii), for eligibility of relief in the PCRA act.

Thus, in Pennsylvania, in accord of its rules, where a prisoner's first opportunity to raise trial counsel's ineffectiveness, is in an initial-review collateral proceeding, not only must that prisoner as a threshold matter prove trial counsel's prejudice but he must prove the prejudice by a preponderance of evidence.

The threshold showing for Strickland purposes is 'the performance prong based on an objective standard of

48

reasonableness, then it moves to a determination of prejudice, based on a reasonable probability that proceeding would have been different.

In other words, when a state prisoner has to raise an at trial counsel claim, when that first opportunity is an initial-review collateral proceeding in Pennsylvania, there is no Strickland test, because the prejudice standard applied through §9543(a)(2)(ii), is diametrically opposed to Strickland, compare, **Com v. Banks**, 656 A.2d. 467, 540 Pa. 143 Sup 1995, certiorari denied 116 S.Ct. 113, 133 L.Ed.2d 65., asserting:

> To be eligible for postconviction relief, defendant must establish by "preponderance of evidence" that his conviction or sentence resulted from enumerated errors or defects found in Post Conviction Relief Act...

Here, the petitioner suffered two trial counsel's one for the evidentiary portion, and another for post-verdict motions, as such, the petitioner, because the state has failed to define the nature of post-verdict motion counsel as a hybrid trial counsel per se, the petitioner has two trial counsel interest to raise, however, the posture is confused based on state law, because they have failed to precisely define the role/character of post-verdict motion counsel, thus consider:

> **Com v. Lassen**, 659 A.2d 999, 442 Pa.Super. 298 (1995), asserting: Post Conviction relief claims relating to trial counsel's stewardship at preliminary hearing are not cognizable since truth determining process is not implicated.

Thus, there are two interest that arise in such context, first, the petitioner and post-verdict motion counsel suffered a conflict of interest, second, can it be reasonably determined that post-verdict motion counsel's stewardship affects the truth

determining process, in the meaning of the PCRA act, here, the petitioner would think not, because, the specific language focuses on the outcome and truth determining process of trial, as such, the petitioner believes those interest, were never provided an effective state forum to air to began with, especially here, where the court defined such counsel's role as becoming appellate counsel after the post-verdict motion proceeding.

However, in the **Strickland** context, there's a reasonable probability, 'sufficient to undermine confidence in the outcome of that "proceeding," had the conflict of interest been evaluated constitutionally under trial counsel principles instead of appellate counsel principles, who's responsibilities are different; and still no effective state forum to air such.

Thus, it would still stand that the petitioner's trial counsel (i.e post-verdict motion counsel) was his direct appeal counsel, thus, in the Martinez context, his at trial counsel claim was moved beyond the direct appeal process, in accord of Pennsylvania law, accord, Com v. Hubbard, 472 Pa. 259, 372 A.2d 687, 695 n. 6 (Pa.1977), asserting, defendants had to raise:

> any ineffective assistance claims "at the earliest stage in the proceeding at which the counsel whose effectiveness is being challenged no longer represents the defendant, or else those claims would be waived.

Thus, in the Martinez context, in accord of state law the petitioner's at-trial-counsel claims were moved outside of the direct appeal process, when the petitioner raised his substantial ineffective at trial counsel claims in a pro se PCRA petition, unlettered in the law, he raised interest similar to those claims

litigated on direct appeal, PCRA counsel adopted those claims, however, under Pennsylvania law, consider, **Com v. Peterkin**, 649 A.2d 121, 538 Pa. 455 (1994):

> Postconviction review of claims previously litigated on appeal cannot be obtained by alleging ineffective assistance of prior counsel and by presenting new theories of relief supporting previously litigated claims.

Here, the petitioner would insert PCRA counsel's performance through the matters discussed in, **Bullock v. Carver**, 297 F.3d 1036 (10th Cir. 2002), holding:

> citing, **Williams v. Taylor**, 529 U.S. 362, 395, 120 S.Ct. 1495 L.Ed.2d 389 (2000) (observing that attorney's failure "to conduct an investigation that would have uncovered extensive records graphically describing the defendant's nightmarish childhood, could not be considered strategic where counsel "incorrectly thought that state law barred access to such records"); **Dixon**, 266 F.3d at 703 (holding that where counsel was unaware of state statute governing cross-examination, "his decision not to cross-examine the witness cannot be accorded the same presumption of reasonableness as is accorded most strategic decisions"); **Pavel v. Hollins**, 261 F.3d 210, 218 n. 11 (2nd Cir. 2001) (collecting cases and discussing how decisions made in ignorance of relevant facts and law cannot be characterized as strategic under **Strickland**);
> ...In many cases, a lawyer's unawareness of relevant law will also result in a finding that counsel performed in an objectively deficient manner. See, e.g. **Kimmelman**, 477 U.S. at 385-86, 106 S.Ct. 2574 (explaining that counsel's failure to conduct pretrial discovery was objectively unreasonable because counsel had a "startling ignorance of the law" and mistakenly believed "that the state was obliged to take the initiative and turn over all of its inculpatory evidence to defense and that the victims preferences would determine whether the State proceeded to trial after an indictment had been returned"); **Magna v. Hofbauer**, 263 F.3d 542, 550 (6th Cir. 2001) (Counsel's complete ignorance of relevant law under which his client was charged, and his consequent gross misadvice to his client regarding the client's potential prison sentence, certainly fell below an objective standard of reasonableness under prevailing professional norms")...Id. at 1050

Upon such terms, it was objectively unreasonable for PCRA counsel to adopt those claims the petitioner raised coupled with

a complete failure to communicate with him regarding relevant state law that would have cautioned him toward such interest and provided him viable alternative avenues for relief, where the trial errors in this case where substantial.

The prejudice in this instance is attended in that 'had PCRA counsel fairly communicated with the petitioner, with just the errors on the face of the factual record, there's a reasonable probability that the outcome of the PCRA proceeding would have different, unless, here counsel was in fact ignorant of the relevant PCRA requirements for litigation and relief.

Here the petitioner's substantial at trial counsel claims were waived because of PCRA counsel's probable failure to investigate the relevant law of the PCRA act, or oversight, carelessness or was to lazy to articulate the substantial grounds for relief found in the factual record of the petitioner's trial and appeal.

As such the posture of the petitioner's matter meets the specific framework Martinez qualified to show "cause" for a procedural default.

The Supreme Court, held:

> (1) inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial;
> (2) Antiterrorism and Effective Death Penalty Act (AEDPA) did not bar petitioner from using his postconviction attorney to establish "cause" for his procedural default; and
> (3) remand was required to determine whether petitioner's attorney in his first state collateral proceeding was ineffective, whether the underlying ineffective assistance of trial counsel claim was substantial, and whether the petitioner was prejudiced.

Thus, in the Martinez context, the petitioner seeks a hearing

on the merits of his at trial counsel claims, by showing "cause" for the default of that claim, through PCRA counsel's ineffectiveness. Accord, (Appx. B, Substantial Trial Counsel Claims, for PCRA counsel also.).

fact §9543(2)(ii), threshold 'prejudice showing, is more restrictive than the test announced in Strickland, and it's "proof, plead and prove by a preponderance of evidence," posture stands diametrically opposed to Strickland.

It is in this context, the petitioner believes this Honorable Court is not prohibited from hearing his 'at trial counsel claims on the merits, according the similarity of, Villot.

Here, the petitioner would contend that his ineffective assistance at trial counsel cliams should be afforded an opportunity to be heard in the Strickland context, an opportunity unattainable through §9543(2)(ii).

The petitioner finds this posture supported by, **Lafler v. Cooper**, 132 S.Ct. 1376 (2012), which re-affirmed the "proceeding" oriented performance analysis required by the express language Strickland announced, "a reasonable probability the outcome of the "proceeding" would have been different."

**Lafler**, re-asserted the fact that not all counsel errors affect the outcome of a particular trial, but are/can still be prejudicial, as the Supreme Court assessed through plea negotiations; which term would stand true for conflicts of interest and other matters as well.

It is upon such principles the petitioner believes his ineffective-at-trial counsel claims should be heard on the merits.

Wherefore the petitioner prays for that relief that law and justice require.

RESPECTFULLY SUBMITTED

DATED: 9, 28, 12

55

## CERTIFICATE OF SERVICE

I, Tyrone Lyles, petitioner, pro se, hereby certify that I am this, 28, day of Sept. 2012, serving legal documents on the parties as listed below:

SERVICE BY FIRST CLASS MAIL, POSTAGE PRE-PAID:

Mr. Micheal Kunz, Esq.
Clerk, United States
District Court Eastern District
601 Market St.
Phila., Pa. 19107
One (1) Original
Three (3) Copies

Seth Williams, Esq.
Dist. Att'y.
3 South Penn Square
Phila., Pa. 19107-3499
One (1) Copy

DATED: 9.28.12

TYRONE LYLES
1000 FOLLIES RD.
DALLAS, PA. 18612